## Bryant, *et al.* v. Peters, *et al.*

1. A motion to dismiss a cause in Chancery, for want of Equity, may be made at any stage of the proceeding—it admits the allegations of the bill to be true, and is to be determined upon an inspection of the bill only.

2. In a bill by the heirs and distributees, against one assuming to act as administrator, it was alleged that the complainants could find no order granting administration, nor any administration bond in the Orphans' Court of the county from which he pretends to have derived his authority ; and consequently, they believed the defendant was never appointed administrator ; and further, they believe he will waste the decedent's estate, and remove from the State ; *Held*, that the allegation authorised the interference of Equity for the purpose of " precautionary justice."

3. It is competent for a Court of Equity to compel the production of deeds. and other writings, where the party complaining shows *prima facie*, that his interest requires it. And an administrator may, at the suit of the heirs, devisees, and other persons entitled, be required to deliver up the title deeds of their respective estates.

4. The cause was called for hearing, and there being no replication to the answer, or depositions taken for either party, a motion was made by the complainant to amend his bill—*Held*, that the amendment should have been allowed.

THE complainants describing themselves as the heirs and legal representatives, with the exception of one, who describes herself as the widow and relict of William Bryant, deceased, filed their bill in April, 1837, on the equity side of the Circuit Court of Tallapoosa. The bill, after stating the relationship of the complainants to decedent, alleges, that he " obtained and amassed" a very considerable real and personal estate, some of which consisted of lands in the State of Georgia, and the residue of nine half sections of land in Tallapoosa county, and a valuable house and lot in the city of Tuskaloosa, together with many bonds and other choses in action; besides twenty-four or five negroes, whose names &c. are particularly set forth. In addition to all which, it is averred, that the decedent owned at the time of his death, a large stock of horses, hogs, cattle and goats ; also corn, fodder and groceries, with household furniture, plantation tools, &c. besides about four thousand dollars in cash, which he had in his possession.

The complainants further allege, that the decedent was not in debt at the time of his death, as they believe, more than five

hundred and fifty dollars, and that he made no will of recent date, as the complainants believe. They are however informed and charge, that he made a will about ten years ago, by which, as they understand, "he disposed of all his property" to them; but they cannot undertake to state, with certainty any thing in relation to that will, as the same was taken from the decedent's house by the defendant, John H. Peters.

It is further stated, that the complainants have heard it rumoured, and some of them have seen a writing, which they understand some persons say, is the last will of the decedent. By that paper, a legacy of one hundred dollars is given to a negro woman named Sally, and the like sum to each of several other negroes: a legacy of two hundred dollars, to Richard Plunket, of the county of Tallapoosa; and the lands of the decedent, in the State of Georgia, are devised to four of the complainants, his children, to wit: Jackson, Nancy, Elizabeth and Lurancy. And it is declared by that paper, that the decedent's son, Needham, one of the complainants, " shall be excluded from any share or interest in the said estate, *because of his ingratitude.*" The residue of the estate of the decedent, is devised and bequeathed to · one Robert F. Randall, an individual whom they have never seen, and of whom they have never heard; and consequently, believe that there is no such person.

It is further alleged, that at the time of the decedent's death, the complainants were all of full age, and on terms of friendship with him, with the exception of his widow; and they positively deny that he executed the pretended will, or if he did, it was at a time when he was labouring under some mental derangement, to fits of which he was subject, for some years previous to his death.

The complainants also state, that one of them, viz: Needham Bryant, came from his residence in Georgia, to the late residence of the decedent in the county of Tallapoosa, for the express purpose of administering upon the estate he had left. Upon his arrival at the decedent's residence, he found his papers locked up in a chest or bureau, and the premises in the possession of the servants belonging to the estate. That he examined all these papers with care, three several times, the last examination being made in the presence of William Goldsby, John H. Peters and Richard Plunket, two of the defendants, but was un-

able to find any paper purporting to be a will, except a writing made about ten years previously.

It is further stated, that the complainant, Needham, being incompetent to manage the administration of his father's estate, soon after his arrival in Tallapoosa, employed the defendant, John H. Peters, who is a counsellor and attorney at law, to aid him in the matter, and to obtain for him and in his name, letters of administration thereupon; and to this end, he executed a power of attorney, authorizing Peters to sign his, Needham's name, to such bond as might be required to obtain letters of administration. All of which Peters did agree to attend to, and Needham returned to Georgia in a few days, that he might move to Tallapoosa, and attend to the business of the estate. But instead of taking out letters of administration in the name of Needham, Peters, as the complainants "believe, in violation of the laws of the land, and without any authority, (unless it is from pretended letters of administration on said estate) assumed to himself, the right to manage said estate;" and before Needham reached Tallapoosa again, (which was after a few weeks absence,) Peters had advertised that all the slaves and other personal property of the estate would be sold on the 7th and 8th days of February, 1837. On the days appointed for the sale, the complainants all attended, and remonstrated against a sale of the property, but Peters declared that he would sell, and that a will of a recent date, made by the decedent, had lately been found, (which is the paper already described, and bears date the 26th September, 1836.) The sale·progressed and property was sold to the amount of upwards of fourteen thousand dollars, and bonds taken by Peters payable to himself.

It is further charged, that Peters has had " and still retains in his possession all the papers belonging to the estate of the said decedent, together with the said old will, made about ten years ago, and the said paper purporting to be a late will of said decedent.

The complainants charge it as their belief, that Peters will waste the estate of the decedent, and they fear he will transfer the bonds, &c. due the estate to innocent persons; and that Peters' estate is insufficient to make good the loss which the complainants would sustain thereby: besides, they have been

informed and believe, that he intends to leave this State, without the intention of ever returning.

It is further alleged, that Peters pretends to act in virtue of letters of administration, yet they have carefully examined the office of the clerk of the County Court, and find there, no evidence that letters of administration have been granted on the decedent's estate; and they are informed by the Clerk that none have been granted, yet they are unable to deny with certainty, this pretence of the defendant, Peters.

Among other prayers, the bill prays, that "Peters may be compelled to produce said writing, purporting to be said pretended late will, and also said old will, and that he answer and say by what means he obtained said papers and all the other papers, and by what authority he has acted, and does now act in the said matters; and that he fully and fairly account and exhibit a full and entire statement of all the property, choses in action, money and other things, which came into his possession from the said estate of said decedent; and that he state what became of all such matters, and that said Peters, further answer what has been done with the residue of the slaves and other property belonging to said estate, which was not sold on said 7th and 8th days of February, 1837." *And further*, that a writ of *ne exeat* issue, forbidding the defendant Peters, from leaving the State; and that Peters be restrained and injoined from collecting, and the other defendants who were purchasers at the sale mentioned, from "paying all, or any part of the purchase money to any person until the matters and things in this bill contained, are fully heard. And that your honor will cause such issue or issues to be made up between the rightful parties, which may be necessary to investigate the validity of said pretended late will; and that said Peters give a true state of the said sale; state who were the purchasers of every article sold, for what amount it sold, who were the sureties to the notes taken, and where said notes now are; and that your honor will grant all such other and further relief which to your orators and oratrixes in the premises may pertain." *And lastly*, that process of *subpœna* may issue, &c.

Writs of *Ne exeat* and *Injunction* were awarded, in conformity to the prayer of the bill.

Peters answered the bill, denying very fully, all profession-

al, moral or legal impropriety in his interference with the estate of the'decedent, and asserting that he had been duly appointed an administrator thereof by the County Court of Tallapoosa, and that he had acted under the authority thus conferred. Other proceedings were had in the cause during its pendency in the Circuit Court of Tallapoosa, which it is not material to notice; and upon the organization of separate Courts of Chancery, the cause was transferred to the Court, directed to be holden at Talladega. At the term of that Court, holden in February, 1840, a motion was made to dismiss the bill for want of equity. The Chancellor thought that " the whole subject of the probate of wills, granting letters of administration, appointing guardians, revoking administration, decreeing distribution, &c. is committed to the County or Orphans Court ;" but he conceded, that under our statute, where a will is admitted to probate, its validity may be contested in chancery, at any time within five years from the date of the probate. He was of opinion, that it did not appear that the will in this case had been proved, or that Peters was acting under it, and dismissed the cause as one of which the Court had no jurisdiction.

It appears from the record, that the counsel for the complainants, upon the cause being called, moved the Chancellor for leave to amend their bill in a very material respect; and, after the Chancellor had read his decree, submitted in writing, the amendment desired to be made. But leave to amend was denied by the Chancellor, on the ground that the " motion came too late, and if granted, would make a *new case.*"

To revise the decree of the Court of Chancery, the complainants have sued a writ of error to this Court.

Wm. P. Chilton, for the plaintiff in error. The Chancellor overlooked the object of the bill. He seems to have regarded it, as filed for the purpose of testing the validity of the supposed will of William Bryant, deceased. Had such been its object, the decree would be unobjectionable; for here, as in England, until the will is admitted to probate, Chancery has no jurisdiction to direct an issue of *devisavit vel non ;* unless, perhaps, the parties interested, consent thus to test its validity, which some of the authorities maintain may be done in equity, even before probate.

The bill avers, that it was the intention of the next of kin to administer on the estate of Bryant; that he employed Peters as an attorney and counsellor to aid him, and gave him a power of attorney to obtain letters of administration, and execute a bond in his name. That Peters instead of following the directions of his principal, in his absence took possession of all the property of the decedent—advertises and sells the same; alleging that he has found a will of the decedent, which justifies the proceeding, and which gives nearly all the estate to a person not related to the decedent, and whom the complainants believe has no real existence. That Peters claims to be an administrator, but the complainants charge, if he have letters, they were fraudulently obtained, and no bond or other record evidence of his appointment can be found : *And further*, that he threatens to waste the estate to an extent beyond his ability to make good in damages. That he threatens soon to leave the State, to return no more, &c. True, the bill alleges that the pretended will is void, prays a discovery &c. an account and distribution, that an issue of *devisavit vel non* be directed and for general relief.

Peters divested himself of the character of attorney, and assumed to act in his own name, and in doing so committed a breach of faith, by which he should not profit. 1 Story's Eq. 306. The Chancellor should have compelled him to account, although he may have had letters of administration. The heirs and distributees were all of age, the estate owed comparatively nothing, and they might have made a division and distribution among themselves. Gayle v. Singleton, 1 Stew. Rep. 566; Dobbs, *et al.* v Cockerham's distributees, 2 Porter's Rep. 328; Toller's Exr. 480 ; 5 Bac. Ab. 447 ; 1 P. Wm's 544—575 ; 2 Fonb. Eq. 322; Story's Eq. 109.

It is alleged, that the records of the County Court furnish no evidence, that administration was ever granted to Peters.

This being the case, there could be no proceedings to revoke his authority either by appeal, or in the County Court.

It is shown by the bill, that the property of the decedent's estate was wasting through the agency of Peters, who was about to remove himself beyond the State. If equity could not relieve under such circumstances the complainants would be remediless; for before letters could be obtained and suit

brought, the property or a portion of it, would be irreclaimably lost.   The equity then, is defensible as a bill *quia timet.*

Again: The jurisdiction of chancery is undoubted, to recover the muniments of title; and such is in part the object of the present bill.

It matters not whether Peters is administrator or not, equity will regard him as a trustee for the parties interested; will provide for the proper management of the estate, and an equitable distribution, and appropriation, of it.   1 Story's Eq. 406; 2 Story's Eq. 131; Fonb. Eq. B. 1, ch. 1, sec. 8, and note 9; 1 Bro. Ch. Rep. 277; 3 Bro. Ch. Rep. 624; 2 Atk. Rep. 213.

The defendant, Peters, insists in his answer, that the will of 1836 has been proved, and may be seen on the records of the Orphans' Court of Tallapoosa.   The will is set up in bar of the complainant's right to the estate of the decedent, and Peters insists on it in his defence; and thus its validity is drawn in question.

It is admitted, that upon authority, fraud in obtaining a will, forms an exception to the exclusive and concurrent jurisdiction of equity over frauds, yet the liberal views of *Lord Hardwick,* in Chesterfield v. Jansen, 2 Ves. Rep. 155, seem more consonant to reason.   And so thinks Mr. Justice Story, 2 Com. on Eq. 422.

Chancery, which looks mainly at the merits of a controversy, has been liberal in allowing amendments.   In the present case, the necessity of the proposed amendment, was suggested by the answer, and it should have been allowed to the complainants, to put in issue the new matter.   Story's Eq. Plead. Amendments have been allowed even after decree.   2 Mad. Ch. 289; Blake's Ch. 195; Bradford v. Felder, 2 McC. Rep. 170; Beauchamp v. Gibbs, 1 Bibb's Rep. 483; Rose v. King, 4 Hen. & Munf. Rep. 475; 3 P. Wms. Rep. 357.

True, more latitude is allowed where the amendment is as to parties, than where it relates to the subject matter of complaint.   The amendment proposed to be made, seeks only to render the obligations of the bill more definite, and charge Peters as administrator *cum testamento annexo,* instead as executor *de son tort.*   To drive the complainants to a new bill, would be productive of costs and delay to them, without a corresponding benefit to any one.

Bryant, *et al. v.* Peters, *et al.*

*Lastly :* A bill should set forth such a state of facts as would give the Court jurisdiction ; but where chancery obtains jurisdiction for one purpose, it will retain and dispose of the whole case.

There are cases where the defects in the bill may be aided by the answer ; and it has been held, that where a defendant has fully answered, it is too late to object to the want of equity.

HEYDENFELDT, for the defendant.

COLLIER, C. J.—A motion to dismiss a bill for want of equity, does not authorise the chancellor to look into the answer and proofs, if there be any, but it is to be determined upon an inspection of the bill only; if that does not disclose a case authorising the interference of chancery, according to our practice, it may be dismissed on motion, at any stage of the cause.  The question then to be determined, is not, whether if the cause had been submitted for hearing on the bill, answer and exhibits, the decree should have been adverse to the complainants, but supposing the bill to be true (as for the purpose of the motion it must be considered,) are the complainants entitled to relief?

The chancellor thought the object of the bill was to contest the validity of what it characterizes as a pretended will of the decedent, alleged to have been made in the year 1836; and while he conceded, that such a contestation was allowable in equity, any time after the expiration of five years from the date of the probate, yet as it did not appear that the will had been proved, he repudiated the cause.   Had the sole object of the bill, have been such as was supposed, we are not prepared to say, that the decree would be erroneous ; for it is not alleged that the will was ever admitted to probate, though it is prayed that an issue may be made up to try its validity.

The bill alleges among other things, that Needham Bryant, one of the complainants, and a son of the decedent, intended to administer on his father's estate, employed the defendant Peters, as an attorney and counsellor at law, to aid him with his advice, &c, and made a power of attorney to him to obtain letters of administration for, and execute a bond in his, Needham's name.   That instead of acting under the power, Peters

took possession of the estate left by the decedent, and pretends to have taken letters of administration in his name from the County Court of Tallapoosa; but the records of that Court do not show such to be the fact, nor is there any administration bond there on file.

That Peters has sold under a pretended order of Court, a number of the slaves, and other personal property belonging to the estate, and says that a will was made by the decedent in 1836, a short time before his death, which makes no provision for some of the complainants, but gives the greater part of his estate to one Robert F. Randall, whom the complainants charge has no real existence.

It is also alleged, that the decedent, about ten years before his death, made a will by which he gave his estate to the complainants; that the will of 1836 was never executed by the decedent, or if executed by him, it must have been during a period of mental derangement.

That Peters has possession of both the wills, and of all the papers, &c. belonging to the estate. That they believe he will waste the estate, and fear he will transfer the bonds, &c.; and that his estate is insufficient to make good the loss which the complainants will thereby sustain: *And further*, they have been informed and believe, that he will leave the State, without the intention of returning to the same.

The bill then prays, that the defendant, Peters, may be compelled to produce the paper purporting to be the last will of the decedent; also, the old will, and answer by what means he obtained them, as well as the other papers of the estate, and by what authority he has, and does now act as the representative of the decedent. That he exhibit a full account of all the money, property, &c. which came to his hands, and that he state what has been done with the slaves and other property not sold by him.

*And further*, that a writ of *ne exeat* be awarded to restrain the defendant, Peters, from leaving the State; and that an *injunction* issue to injoin the collection of the money due the estate, &c.: *And lastly*, such other relief as may be proper, be granted, &c.

That the jurisdiction of the Orphans' Court, under the statutes of this State, is not *universal* and *exclusive* over the es-

tates of deceased persons, or of the rights of heirs, legatees and distributees, is abundantly shewn in Leavens v. Butler, *et ux.* 8 Porter's Rep. 396. How far the jurisdiction of that Court may be exclusive, it is unnecessary to consider, as it is clear, there are many cases of that character, in which a Court of Equity only, is competent to afford complete redress.

It is not *directly* alleged that Peters acts as the representative of the decedent's estate, without the authority of law, but the complainants express the belief, that letters of administration have never been granted to him; and as a ground for that belief, state that they can find no order for that purpose, nor any administration bond in the Orphans' Court of Tallapoosa, from which he pretends to have derived his authority; and that the clerk of that Court informs them, there never has been any. Taking this to be true, which a motion to dismiss, impliedly admits, and it is clear the Orphans' Court has no jurisdiction over him. But the complainants, as the heirs and distributees of the decedent's estate are not remediless. Chancery is the appropriate tribunal to which they may resort to injoin Peters from any further interference in the matter, and obtain security for their rights. And even conceding that the possession of the decedent's estate by Peters, is legal; yet if the complainants interest is in jeopardy, that Court will lend them its protection. It is laid down generally, that "where there is a future right of enjoyment of personal property, Courts of Equity will interpose and grant relief upon a bill *quia timet,* where there is any danger of loss, or deterioration, or injury to it in the hands of the party entitled to the present possession." 2 Story's Eq. 142. Bills *quia timet* "are in the nature of writs of prevention to accomplish the ends of precautionary justice. They are ordinarily applied to prevent wrongs or anticipated mischiefs, and not merely to redress them when done. The party seeks the aid of a Court of Equity, because he fears (*quia timet*) some future probable injury to his rights or interests; and not because an injury has already occurred which requires any compensation or other relief." This jurisdiction "is applied to the cases of executors and administrators, who are treated as trustees of the personal estate of the deceased party. If there is danger of waste of the estate, or collusion between the debtors of the estate and the executors or ad-

ministrators, whereby the assets may be substracted, Courts
of Equity will interfere, and secure the fund; and in the
case of collusion with debtors, will order the latter to pay
the amount of their debts into Court." 2 Story's Eq. 130–1.—
The complainants state, not only that they have been unable to
find any bond executed by Peters for the proper administra-
tion of the decedent's estate; but they believe he will waste the
same, to an extent which his own means are insufficient to make
good; and they believe further, that he will remove from the
State. These allegations, coupled with the fact that the com-
plainants are heirs and distributees of a considerable real and
personal estate, which has come to the hands of Peters, are en-
tirely sufficient to authorise equity to interfere for the pur-
pose of "precautionary justice."

The equity of the bill in the present case, is defensible upon
other grounds. The complainants allege that the defendant
Peters has the possession of all the papers belonging to the
estate of the decedent; among these, there is one will which
makes them the legatees, and another which he, Peters, pre-
tends, makes another disposition of the estate. Of these pa-
pers, a discovery is asked. It is the acknowledged office of
chancery, to compel the production of deeds and other wri-
tings, where the party complaining, shows *prima facie*, that
his interests require it. 2 Story's Eq. 12–13. If the facts be
as supposed, is it not essential to the adjustment of the rights of
the parties claiming under these writings, that they should be
produced, that the proper steps may be taken to test their va-
lidity as wills, and the letters of administration, if any have
been granted, may be revoked? If the first will be valid, the
complainants cannot recover their legacies through the agen-
cy of the Orphans' Court, until it is regularly proved and es-
tablished; and this can only be done when it is produced, or if
lost, its contents proved.

Again: It is alleged that the decedent at the time of his
death, was the owner of a large real property, both in this
State and Georgia. Now it is presumable, that for this, he had
deeds or evidences of title, all of which are said to be in the
possession of Peters. And although he may be an administra-
tor, as he insists, yet he would not be required to return a sche-
dule of these papers to the Orphans' Court. Ordinarily an ad-

ministrator has nothing to do with the real estate of his intes-
tate, and the bond executed by him, upon receiving his authori-
ty, does not undertake for its administration. Upon a deficien-
cy of the personal assets, &c. he may petition for an order of
sale, &c. of the lands, but otherwise his duties do.not require
him to interfere with them. See adm'rs oath, Aik. Dig. 177.
This being the law, it is essential to the interest of heirs, and
others, that equity should possess the power to compel the pro-
duction of title papers, and provide for their safe keeping, while
the personal estate is in the course of administration. The
law as extracted from the English adjudications on this point,
is thus stated: "Heirs at law, devisees, and other persons, pro-
perly entitled to the possession and custody of the title deeds
of their respective estates, may, if they are wrongfully detain-
ed or withheld from them, obtain a decree for a specific deli-
very of them." 2 Story's Eq. 13, and cases cited. .

To say nothing of the extensive jurisdiction exercised by
Courts of Equity; in cases in which a client complains against
his counsel, a principal against his agent. and over legacies,
and the distribution of estates; and in matters of account and
trust, as well as in compelling a discovery with a view to re-
lief in that tribunal, or some other, we think the equity of the
bill is sufficiently shewn from what has been already said.—
1 Story's Eq. 306–7, 310, 436–8–9, 441, 506–7–8, 512, 542.

According to the practice in the English Chancery (which
in the absence of any rule of our own, at the time this cause
was decided below, must be our guide, 24 rule of the practice
in chancery, 5 Stew. & P. Rep. 12,) the complainant before
he files his replication, may amend his bill as a matter of course,
and even without costs, if he does not thereby put the defen-
dant to additional expense. Lube's Eq. Plead. 62. But no
substantive amendment can be made after that period, for that
would be to open the pleadings a second time; but even then
under special circumstances, the complainant will obtain leave
to withdraw his replication in order to add an amendment.—
This indulgence will not, however, be granted after the publi-
cation of the depositions; for it would be unjust to permit the
complainant to put new facts in issue, when he should happen
to find that those on which he originally relied, were not sub-
stantiated. In such case, his only remedy is to file a supple-

mental bill.    Lube's Eq. Plead. 65; Hoffman's Ch. Pr. 284; *et post.* Story's Eq. Plead. 268, *et post.*    In the case at bar, only one of the defendants had answered, and the complainants had not replied to that answer, nor had depositions been taken for either party.    According then, to the practice as we have stated it, the motion to amend the bill was in time, and should have been granted.

Whether a refusal to permit an amendment which should be allowed, will authorise the reversal of a decree on error, we need not consider. What we have said in regard to the practice on this point, will sufficiently indicate the course of proceeding in the future progress of the cause.    And without adding any thing further, our conclusion is, the decree must be reversed, and the cause remanded.