CALHOUN, BY HIS NEXT FRIEND, V. KING, ET AL.

1. When a trust fund is in danger of being wasted or misapplied, a court of chancery will interfere at the instance of those interested in it, and by the appointment of a receiver, or in some other mode, prevent the destruction of the fund. This rule applies to executors and administrators, as to all other trustees.

2. Where one administered on an estate in Georgia, in 1826, and some ten or twelve years since came to this State, bringing with him the minor distributees, and the property of the estate, and died in possession thereof; and the property being about to be sold for the payment of his debts, a court of chancery may interfere by injunction, at the instance of a minor distributee, and prevent the sale of the property, although it is not shown that the surety to the official bond of the administrator in Georgia is insolvent.

3. In such a case, if no settlement has been made by the administrator with the probate court in Georgia, the court of chancery has power to ascertain the amount in the hands of the administrator, subject to distribution, and the amount or value of the distributive share of the complainant.

ERROR to the Chancery Court of Talladega.

The bill was filed by the plaintiff in error, and charges that about the year 1826, David Calhoun, a citizen of Franklin county, Georgia, died intestate, leaving a large real and personal estate, amounting to twenty thousand dollars ; that at his death he did not owe more than three hundred dollars ; that he left a widow and two children—the complainant and John C. Calhoun, since dead ; that administration of his estate was granted to his widow and one William King, who by virtue thereof took all the property into their possession, and not long after intermarried ; that King disposed of all the property, real and personal, except the negroes, six in number, and with his wife, removed to Talladega county, bringing with them the whole of the personal property of said deceased, and the two infant children (complainant and his brother,) where he remained until his death some two years since, disposing of the money and property thus acquired, as his own ; that King departed this life, leaving his widow and John C. Calhoun his executors, to whom letters testamentary were granted ; that John C. Calhoun also departed this life, and the letters testamentary to the widow being revoked, administration *cum testamento annexo,* was granted to David A. Griffin, then sheriff, as also letters of administration on the estate of John C. Calhoun ; at the expiration of his term the administration devolved on Spence, his successor in office, who, it is alledged, is permitting the property to be sold for the payment of King's debts.

The prayer of the bill is, that the slaves be decreed to the complainant, and also for general relief ; and a prayer for injunction, &c. which was granted.

The chancellor, on motion, dismissed the bill for want of equity ; from which decree the complainant prosecutes this writ, and assigns for error, the dismissal of the bill, and also that the court erred in not permitting the complainant to amend his bill.

L. E. Parsons, for plaintiff in error.—The court should have permitted the amendment to be made. [Bryant v. Peters, 3 Ala. 160.] The chancellor erred in supposing the bill filed to compel a foreign administrator to account ; it is an equitable claim, asserted by a minor, founded on a breach of trust, of which chancery has jurisdiction, whenever it has jurisdiction of the person or property ; and that a court of chancery will interfere in this case to prevent irreparable injury. He cited 7 Cow. 64 ; 4 S. & R.

389, 392 ; 9 ib, 252, 259 ; 2 W. C. C. Rep. 337 ; 2 Stewart, 47 ; 12 Peters, 11, 18.

Moody and Rice, *contra*—argued that the decree was right, because it was not alledged in the bill that a final settlement had been had in the State of Georgia ; that it did not appear that the security upon the administration bond was not good ; that the ordinary has exclusive jurisdiction, and there must always be some one to represent the estate, who may be sued. They cited Story's Confl. of Laws, 421, 450 ; Aik. Dig. 176, 179.

ORMOND, J.—It is an established rule of the court of chancery, that where a trust fund is in danger of being wasted or misapplied, it will interfere, on the application of those interested in the fund, and by the appointment of a receiver, or in some other mode, secure the fund from loss. This rule applies with full force to executors and administrators; in such cases, the jurisdiction of chancery, in this country, is concurrent with that of the orphans' court, and acts in aid of, and as ancillary to it. [For the general principle, see Story's Eq. 2 vol. § 836, and cases cited.]

The allegations of this bill establish, conclusively, that the trust fund is in the most imminent danger of being entirely wasted, or placed beyond the reach of the *cestui que trust;* as the slaves are about to be sold to pay the individual debts of King, the administrator; and if the court of chancery cannot act, no power exists to prevent the total loss of the trust fund.

The obstacle to the action of the court is supposed to be found in the fact that King received the slaves in virtue of power derived from the probate court in the State of Georgia, and that he is only amenable there, nothwithstanding he has brought the property, and the *cestui que trust,* to this State.

It cannot be doubted that an executor or administrator, as such, has no power to sue *extra territorium*, nor is he subject to suit, even, it has been said, where he brings with him into another country, the assets received in the country from which he obtained his appointment. This latter principle has however, been denied to be law in the case of Campbell v. Toucey, [7 Cow. 64,] where it was held that he might be sued as executor, *de son tort.* [See also Danby's executors v. Edwards, at the last term.]

Conceding the law to be as above stated, we do not perceive

that it militates against the relief here sought, even supposing the proper inference to be, that the administrator has never settled his account with the court of ordinary in the State of Georgia. This is not a suit against the administrator for a debt due from the estate, but it is an assertion of title to the property itself, which being found in this State, will give the court jurisdiction; and if it were clear that the estate was not finally settled, a court of chancery in this State, the property and the parties all being here, would have the power to interpose and prevent the destruction of the fund until the settlement could be made. [Cruikshank v. Roberts, 6 Madd. 104.]

It appears, however, that the father of the complainant died in Georgia, in 1826; that in that, or early the succeeding year, the mother of complainant and one King, administered on the estate, and took possession of all the effects, real and personal, of the deceased—that about the year 1830, (as appears from the answer) King, having married the mother of complainant, removed to this State, bringing with him all the property of the deceased, and the complainant and his brother, both minors. King has since died without making any settlement with the complainant, and the property is now claimed, and about to be sold for the payment of King's debts.

It is certainly true, that until the debts of the deceased are paid, the heirs have no right to call for distribution; but it is not creditors who are now objecting, nor is any objection set up in their behalf; nor indeed can it be presumed, that any are now in existence; but on the contrary, the presumption, after such a lapse of time and removal of the property into this State, should be that the estate has been settled. The objection, is in effect, made by the administrator himself, who has removed the effects of the estate from the country where the settlement should have been made, and now urges that as a reason why he should not be prevented from wasting the property.

It is also urged that the security, which it must be presumed was taken by the probate court in Georgia, must, as there is no allegation in the bill to the contrary, be considered an adequate protection to the complainant. We cannot agree that the surety to the administrator's official bond, is the only security which those interested in the trust fund have for indemnity against loss. The experience of every day, admonishes us, that it frequently

fails of producing this result; and in a case like the present, where he bond must have been taken some fifteen or sixteen years since, and the surety, if living at all, resides in another State, we think it cannot be doubted that the complainant has a right to the interposition of this court, to prevent the destruction of the fund, without being compelled to rely on the doubtful security afforded by the official bond.

The bill is certainly exceedingly inartificial, if not defective; but we think it should not have been dismissed for want of equity. It does not state whether any settlement was made by King in Georgia; the assets which came to his hands, or the debts which he paid, or the amount in his hands, subject to distribution, except so far as it may be gathered from the allegation that all the property remaining in specie, is not more than sufficient to satisfy the complainant's distributive share. In these and other particulars which might be mentioned, the bill should, on motion of the complainant, have been amended, especially in a case where an infant was the complainant. As to the duty of the court in permitting amendments, see Bryant v. Peters, [3 Ala. Rep. 160.]

As the cause must be remanded, it may be proper to state that if the fact should turn out to be, that no settlement of the estate was ever made in Georgia, that the court of chancery having rightfully obtained jurisdiction of the cause for one purpose, may retain it for all purposes. It could subserve no rational purpose, nor benefit any of the parties, to suspend the proceedings until a formal settlement of the estate was made in Georgia, as the basis for the future action of the court of chancery. We think, therefore, that the court has power to ascertain the amount in the hands of the defendant, as representative of King, subject to distribution, and also the amount or value of the distributive share of complainant, as heir of his father and brother, and decree accordingly. For this purpose, let the decree, dismissing the bill, be reversed, and the cause be remanded.