## JULIAN AND WIFE v. REYNOLDS, ET AL.

1. The allegations of a bill, being, that an administratrix in South-Carolina, had purchased a number of the slaves of the estate, with the assets of the estate, and converted them to her own use, bringing them to this state, and afterwards conveying them by deed of gift to two of her children, and praying an account of them, as assets of the estate, &c., and the proof being, that by the purchase, the administratrix bought only what she considered her own interest, and that of two of her minor children in the estate —that she paid no money, but executed her own note to her co-administrator for the amount—Held, that the proof did not sustain the allegations of the bill—Further, that there was nothing, shown upon the bill, to give a court of chancery of this state, jurisdiction.

Error to the Chancery Court of Lowndes.

THE bill was filed by the defendants in error, and alledges that James Mosely died in South Carolina, possessed of a large estate in land, slaves, &c., and that Mary Mosely, the widow, and John Mosely, one of the distributees, became his administrators. That by the law of South Carolina, the widow is only entitled to an estate for life in the portion assigned her, and that the complainants are each entitled to one tenth part, and that John Mosely, has waived his distributive share. That the administrators sold personal property to the amount of $7,756 58, and that other effects to a large amount came to their hands. That at the sale of the estate, Mary Mosely purchased a number of slaves, (whose

names are given,) with the effects of the estate, and which it is alledged, together with their increase, belong to the distributees. That she has in her possession other slaves, (also described,) exchanged for some of those purchased at the sale, or purchased with money belonging to the estate, and it is insisted that she is only a trustee, holding for the benefit of the distributees. It is also alledged that John Mosely purchased slaves at the sale more than equal to his distributive share.

The bill also alledges the sale of sundry tracts of land, &c., and the purchase by Mrs. Mosely of a tract of land in Lowndes county, with the assets of the estate, &c. and that Mary and John Mosely, have never accounted, or settled said estate. That she now claims the slaves as her own, and has by deed of gift dated 25th September, 1830, conveyed them to Eliza Julian, formerly Eliza Mosely, and to Martha Mosely, and all the personal property in her possession.

Mary and John Mosely and others are made defendants to the bill. The prayer of the bill is for an account, an injunction, &c., and that the deed of gift be cancelled.

Mary Mosely answered the bill, but as Julian and wife, and the guardian of Martha, answer and put in issue the allegations of the bill, upon which the equity rests, it is unimportant to state it.

By order of the chancellor, the deposition of John Mosely, a defendant in the suit was taken, subject to all legal objections, an affidavit being made of his materiality, and that no decree was sought against him in that suit.

His testimony establishes, that the sale of the estate took place in the spring of the year 1828; that at the sale he purchased a boy at $500; that his mother purchased a number of slaves at the sale, intending to buy the interest of herself and the four minor children, and executed her note to him for the amount. The name of the slaves, and the price given for each, are stated. That she paid no money at the sale. No settlement has ever been made of the administration.

The chancellor overruled the objection to the testimony of John Mosely, one of the defendants, and considering that his testimony substantially sustained the allegations of the

121

Julian and Wife v. Reynolds, et al.

bill, ordered an account to be taken.    This is now assigned as error.

JOHN D. F. WILLIAMS, for plaintiffs in error.

1. The bill and proofs do not correspond, and the bill should have been dismissed.    [Gibson v. Carson, 3 Ala. Rep. 421 ; Clements v. Kellog, 1 Ib. 330.]

2. Mary Mosely did not purchase with the trust funds.

3. An administrator with an interest may purchase at his own sale, provided the sale and purchase be *bona fide.*— [Brannon v. Oliver, 2 Stew. 47 ; Julian v. Reynolds, 8 Ala. 680.]

4. Even where there was no order of sale in South Carolina, unless the laws of that State do not require it.    [Brannon v. Oliver, 2 Stew. 47.]

5. There was no bad faith in the purchase merely because she did not give security.    After the term of credit, she was chargeable with the amount of her note as cash.    [Childress v. Childress, 3 Ala. 852.]

6. There was no bad faith, unless she violated the terms of the sale, and this does not appear.

7. The bill does not charge fraud, nor are the facts inconsistent with good faith.    And a court of chancery will not therefore impute fraud.    [Steele & Kinkle v. Lehr, 3 Ala. 352.]

8. John Mosely was an incompetent witness—1. Because he is a party defendant, and liable for cost.    2. Because a decree is prayed against him.    3. Because an order *pro confesso* has been taken against him.    4. Because it is greatly to his interest to subject the specific property in controversy. [1 Smith's Ch. Pr. 344.]    5. Being a co-administrator, he is liable for Mary Mosely's acts under the laws of South Carolina.    [Lucus v. Curry, 2 Baily, 406 ; Burt v. Kimble, 5 Por. 137.]

HOPKINS and BOLLING, contra.    The law of this case was settled when it was here at a previous term.    [8 Ala. 680 ; see also, 7 Ala. 906.]

The effect of the allegation in the bill, that Mrs. Mosely purchased the slaves with the assets of the estate, is equiva-

Julian and Wife v. Reynolds, et al.

lent to an allegation that she paid nothing for them, as she paid nothig for them which belonged to her, and the estate received nothing in exchange. [Taylor v. Branch, 1 S. & P. 249; Stewart v. Eden, 2 Caine's, 126; Saunderson v. Judge, 2 H. 13; Harrison v. Weaver, 2 Porter, 542; Gressly Eq. Ev. 167.

Each administrator is liable to the distributees for the assets only, which he received. [Edmunds v. Crenshaw, 14 Peters, 166; King v. Shackleford, 6 Ala. 426; Bondercan v. Montgomery, 4 W. C. C. R. 186; 10 Peters, 175, 582.] It does not appear that John Mosely ever had any of the slaves in his possession, or is liable for the receipt of them by the administratrix, and no decree is sought against him. He was then a competent witness. [Greenl. Ev. 90, 446; Thompson v. Armstrong, 5 Ala. 383.] Doby was then also a competent witness.

John Mosely having with his mother executed a joint bond for the administration, is at most only responsible as her surety, and although a defendant to the bill, as no decree was sought against him, he was competent to testify against his own interest, and in favor of the complainant, if he does so without objection. [2 Brock. C. C. Rep. 159.] A purchase by an administrator at his own sale, without giving security for the purchase money is void. [McLane v. Spence, 6 Ala. 897.]

Mr. Mosely being a trustee, the plaintiffs in error are mere volunteers, being donees, and the trust fund may be followed in their hands. [Levin on Trusts, 616; Levan v. Ligon, 1 McCord, 232.]

ORMOND, J.—The rule is the same in a court of chancery, as at law, that to entitle a party to relief, the allegations and proof must correspond, and that relief can no more be granted on proof without the necessary allegations putting such facts in issue, than upon allegations without proof. Clements v. Kellogg, 1 Ala. 330, and in previous, as well as subsequent cases, the same doctrine has been stated and enforced.

The relief is sought in this bill, upon the allegation, that Mary Mosely, one of the administrators of the estate purchas-

ed a number of the slaves of the estate, with the assets of the estate, and has converted them to her own use, and conveyed them by deed of gift to two of her children. The proof is, that she purchased them at the sale, designing at the time to purchase only the amount of the distributive shares, of herself, and the four minor children in the estate ; that she made no payment whatever on account of her purchase, but executed her note for the amount of the purchase money to her co-administrator.

It is very obvious that the case made by the bill, and the facts as disclosed by the proof, are entirely dissimilar. The bill is filed on the assumption that the slaves are still the property of the estate—that as trust property they may be followed into the hands of a purchaser with notice, or of a mere volunteer, as the donees here are alledged to be, and that the distributees may demand an account of it, as property belonging to the estate. The proof shows that the slaves are not the property of the estate, but the individual property of Mrs. Mosely, and that she is a debtor to the estate to the amount of her purchase, if she has not discharged it by the payment of debts due by the estate, or in satisfying the claims of the distributees. There is nothing in the proof from which it can be inferred, that the purchase was not made in good faith, and is not such as would be supported; even if the purpose of the bill was to set it aside. There is not, according to repeated decisions of this court, any objection to such a purchase by a personal representative, such as Mrs. Mosely was, with an interest, if made *bona fide*, and we cannot assume that the law on this subject, is different in South-Carolina, from our own, as was held in this case at a former term.— [Julian v. Reynolds, 8 Ala. 683.]

It would then, be a sufficient reason for repudiating this bill, that it is wholly unsupported by proofs of its allegations, but it is open to another objection quite as formidable. The bill discloses a case of equitable cognizance every where, where the trust property might be found, and it might be added, exclusively cognizable in equity. But the proof shows, that the courts of this state could not take jurisdiction of this subject, but that the probate court of South-Carolina, is the

Julian and Wife v. Reynolds, et al.

appropriate forum in which the estate should be settled. In King v. Calhoun, 5 Ala. 523, a bill in chancery was sustained, where administration had been commenced upon an estate in Georgia, and the property of the estate, in specie, alledged to be brought into this state, and in imminent danger of being wasted, as the administrator was dead, and the property about to be sold for the payment of his individual debts. We held that chancery might interpose to prevent the destruction of the fund, and having possession of the case for one purpose, might retain it for all purposes, make a final settlement of the administrator's account, and decree distribution.

The fund here in the hands of Mrs. Mosely, is the amount she will be found indebted to the estate, upon the settlement of her administration in South Carolina, and after receiving a credit for the sums she may have paid to the several distributees. If this fund being in this state, were in danger of being lost, possibly a court of chancery might interfere. But that fund, whatever it may be, is not only not ascertained, it does not appear to be in any danger. An attempt was made, by an amendment to the bill, to show that the slaves supposed to be trust property, were in danger of being removed from this state, but the chancellor very properly refused an injunction, considering the causes alledged insufficient. It may be added, that it appears that the sureties to the administration bond, are amply sufficient to ensure the collection of the fund, which may yet remain in the hands of the administratrix, if it were shown that she is not herself able to respond. [Treadwell v. Rainey, 9 Ala. 593; Story on Confl. of L. 432, § 16, and cases there cited.]

These considerations, as they are decisive of the case, render it improper to enter upon the enquiry, whether J. Mosely, a defendant to the bill, the witness by whom the complainant established the facts, was competent, under the circumstances, to testify.

The bill must be dismissed, but without prejudice to any suit the complainants may hereafter institute to recover their distributive shares, of their father's estate.