Dougherty *vs.* McDougald *et al.*

No. 16.—WILLIAM DOUGHERTY, plaintiff in error, *vs.* ANN E. McDOUGALD, adm'x, &c. and others, defendants in error.

[1.] Where a party has an interest in the estate of an intestate, as a judgment creditor, and it appears that the administratrix, by fraud and collusion, is misapplying the assets of such estate in such manner as to *injure* such judgment creditors and to prevent the collection of his debt, a Court of Equity has jurisdiction to appoint a receiver to take charge of such assets : but before the Court will interfere with the due administration of the assets in the hands of an executor or administrator, by appointing such receiver, a strong case must be made by the complainant. He must show that he has good and substantial reasons to fear some probable future *injury* to his rights or interests, or the Court will not interfere in his behalf, and take from such executor or administrator the possession and control of the assets of the estate, and place the same in the hands of a receiver.

In Equity, in Muscogee Superior Court. Application for a receiver. Decision by Judge IVERSON, at Chambers, May 22d, 1851.

William Dougherty, the complainant, in his bill, which he exhibited in his own behalf, and in behalf of all other creditors of Daniel McDougald, deceased, who chose to come in and be made parties, alleged, that he was a creditor by judgment, of Daniel McDougald, deceased, to the amount of $1,200; that in 1849, McDougald died, leaving a large estate, of the value of $60,000, in the State of Georgia; that he died insolvent, and without a faithful administration of his estate, it will prove insufficient to pay his debts; that no steps were taken by the widow and brothers to obtain administration, until complainant took steps to force the Clerk of the Court to take letters of administration; that administration was then granted, June, 1850, to Ann E. McDougald, the widow, and upon the representations of her brother, R. B. Alexander, and brother-in-law, Alex. McDougald, bond was required by the Court, only for the sum of $36,000; and that R. B. Alexander and Duncan McDougald were taken as the sureties on the bond; that the administratrix made and returned no inventory or appraisement, until about 11th January, 1851, and then not under oath; that, at the death of McDou-

gald, he had $9,000 on deposit in one of the banks, which was not returned, and which went into the possession of either the administratrix, Duncan McDougald or Alexander McDougald; that Daniel McDougald, at his death, was in possession of a plantation and negroes, (about 60,) with the stock, &c. worth $25,000, from which two crops have been gathered, worth $15,000; none of which had been returned by the administratrix, but had been in possession of Duncan McDougald, who pretends to claim the same as his own. The complainant charged, that if he has the titles, it was by an arrangement with Daniel McDougald in his lifetime, with intent to defraud his creditors; that Daniel McDougald had, at his death, notes, accounts, &c. to a large amount, not known to complainant, but known to the administratrix, which had never been returned by her; that said administratrix received $5,173 50 in cash, from a claim of the intestate, collected from T. Fort, by I. L. Harris, and also other large amounts from rents, &c. none of which had been returned by her. The bill charged, that these and other facts charged, arose from a fraudulent arrangement, agreement, and combination between the administratrix, Robert B. Alexander, Duncan McDougald and Alexander McDougald, that the estate should be so conducted and managed, that as small a portion as possible should be regularly and fairly administered, and as much as possible should be kept out for the family; in proof of which agreement and combination, the complainant stated other acts by the defendants, unnecessary to be here repeated, under the view taken of this cause by this Court. The bill charged, that the administration bond affords but little security to the creditors, the administratrix having no separate estate—Robert B. Alexander, one of the sureties, having died since that time insolvent, and that the property of Duncan McDougald, the other security, except that fraudulently obtained from Daniel McDougald, would not exceed $5,000. The inventory returned by the administratrix amounted to only about $15,000; and the bill charged, that by the fraudulent arrangement charged, the assets of the estate would be wasted, and the creditors left unpaid. The prayer was for the appointment of a receiver and the adoption of such

orders and rules as would prevent the misapplication of the assets of the estate, for the benefit of those entitled.   The bill did not allege that there were any debts due by the intestate, of higher dignity or older lien than  that  of  the  complainant,  nor that the administratrix had ever refused to pay complainant, nor that complainant had fears of losing his own debt.

The presiding Judge granted an order, requiring  the  defendants to appear before him, at Chambers, at  a  day  appointed, and show cause why a receiver should not be  appointed.   The defendants appeared and showed for cause, the  insufficiency  of the case made by the complainant's bill.   The prayer for a receiver was refused, after argument, and this decision  is  the  error  assigned.

W. DOUGHERTY, for plaintiff in error.

BENNING and H. HOLT, for defendants.

Brief of H. L. BENNING.

I.   1.  A receiver will not be appointed before answer.   3 *Dan'l Ch. Pr.* 427, 429.    2 *Story Equi.* §§385, '6.    4 *Ga. Rep.* 423, '4, '5.

2. The Court appoints one with  great  reluctance.   16  *Ves.* 70.    3 *Dan'l,* 406, 407.

3. The bill does not allege that plaintiff " fears" any injury to himself.    2 *Story Eq.* §826.    He could not "*fear*" for others, and yet he binds them.    1 *Story's Eq.* §549.    *Story's Eq. Pl.* §99.

4. A creditor's bill does not lie in Georgia.

5. There is no allegation of the numerousness of the  creditors.    *Story's Eq. Pl.* §95.

6. The remedy is adequate at Law.    *Pr. Dig.* 447.    7  *Ga. Rep.* 209.    2 *Ib.* 154.    3 *Ib.* 3.

7. Equity will not aid a judgment creditor until  he  has  exhausted his legal remedies.    3 *Kelly,* 452.    4 *Ib.* 322, 323.

8. It never aids by appointing a receiver when he has a right which he can assert at Law. 3. *Dan'l Ch. Pr.* 416, 401, '2, '4, '6, '7, '12. 1 *Jac. & Walk.* 627. 16 *Ves.* 70. 2 *Story's Eq.* §836.

II. What is alleged for misconduct does not amount to misconduct.

1. Administrator is not bound to make inventory, &c. till required to do so. *Pr.* 226, 227, 228.

2. Nor is he required to swear to it. *Pr. Dig.* 222, 224.

3. She may make it by agent. *Pr. Dig.* 222. It is the duty of the administrator to make out an inventory of the personal estate and cause it to be appraised, (if appraisers are appointed,) and return both inventory and appraisement *within three months* from the time when he shall have been directed to do so. *Pr. Dig.* 226.

4. It is not his duty to make out inventory, &c. before he is required to do it. *Pr. Dig.* 226, 227, 228. *Wms. Ex'rs. part* 3, *b* 2, *ch.* 1, *sec.* 3.

5. But it is his duty to render a full account of the *condition of the estate* annually, &c. *Pr. Dig.* 240, 232.

6. The time for rendering this is now enlarged till July. *Acts of* 1850, 41.

7. Personal estate, as used in the Statute, does not include choses in action. *Pr. Dig.* 436.

8. An alternative allegation is too uncertain. *Story's Eq. Pl.* §§245, 245a. 246. 6 *Ga. Rep.* 598.

9. Nothing is fraud which does not involve a breach of a legal or equitable duty, to the injury of another. 1 *Story's Eq.* §187.

III. 1. Allegations in bill must be consistent. *Story's Eq. Pl.* 249a. The Court of Ordinary has exclusive *original* jurisdiction in this case. *Pr. Dig.* 245, '6, 239, '40.

2. The receiver would, in fact, be the administrator. *Calvert on Parties*, 16 *marg.* *Utteeson vs. Man*, 26, 97.

3. If the jurisdiction is concurrent, still the Court of Ordina-

ry was the first to acquire it in this case. *Pr. Dig.* 246. 2 *Kelly*, 306.

4. A variety of remedies for such a case as this, is provided in that Court. *Pr. Dig.* 245, 246, 239, '40, 232, 226.

If there was misconduct, Dougherty having bought the fi. fa. after it occurred, cannot sue for it. 4 *Ga. Rep.* 284, '5, '6.

*By the Court.*—WARNER, J. delivering the opinion.

[1.] This was an application to the Chancellor, on a bill filed by the complainant, as a judgment creditor of the late Daniel McDougald, against his administratrix, for the appointment of a receiver, to take charge of the assets belonging to the decedent's estate, on the ground of alleged fraud and mismanagement by the administratrix. This bill, although filed by the complainant in his own name, and in behalf of such other creditors as may hereafter choose to come in and be made parties thereto, must be considered as the bill of the complainant alone. His application for the appointment of a receiver, to take the assets out of the hands and control of the administratrix, is based on the principle of *quia timet.* That a Court of Equity will entertain jurisdiction in such cases, on a proper case being made, there is no doubt; but Courts of Equity will never interfere with the due administration of assets in the hands of an executor or administrator, upon slight grounds. The principle on which the Court interferes with the assets in such cases is, when the complainant makes out such a case by his bill as shows he has good and substantial reasons to fear some *probable future injury to his rights or interests,* and not because an injury has already occurred. 2 *Story's Eq.* 130, §826. As, for instance, where property is in the hands of a trustee for certain specific uses or trusts, and is in danger of being diverted or squandered, to the *injury* of any claimant, having a present or future fixed title thereto, the administration of it will be duly secured by the Court, according to the original purposes, in such manner as the Court may, in its discretion, under all the circumstances, deem best fitted to the end, as by the appointment of a receiver, &c. 2 *Story's*

*Eq.* 130, §87.   The amount of the complainant's judgment obtained against the decedent in his lifetime, is about $1,200. The appraised value of the intestate's property now in the hands of the administratrix, consisting of negroes and other personal property, is $14,780, as appears from the complainant's own showing—all of which is subject to the payment of his judgment ; besides it does not appear that he has ever applied to the administratrix for payment of his demand, or that there are any older *liens* or incumbrances on the property, other than his judgment, or any obstacle which would prevent its collection; nor does he allege in his bill, that he fears that he will be *injured* in any manner by the probable loss of his judgment debt, but on the contrary, from the facts which he does allege, the payment of his demand is amply secure.   Duncan McDougald, one of the securities to the administration bond, is admitted by the complainant to be worth $5,000—an amount sufficiently large to protect the payment of his judgment, amounting only to the sum of $1,200, as well as the accruing interest thereon.   The plaintiff in error, however, insists that the Court should appoint a receiver, notwithstanding the security on the administrator's bond may be able to respond, and relies on the case of *Calhoun vs. King*, (5 *Ala. Rep.* 523,) in support of that position.   In that case the complainant was a *minor distributee*, who had no lien on the property of the intestate, and the security, *if living at all*, say the Court, resided in the State of Georgia, a foreign jurisdiction, and some fifteen or sixteen years had elapsed since the bond was executed in the latter State.   In that case the Court appointed a receiver, and, in our judgment, exercised a sound discretion in doing so.   The complainant further insists, that he is a creditor of the estate, and has an interest in the funds of that estate, and as such, has the right to go into a Court of Equity to have the same secured and properly applied, whenever there is danger of waste, occasioned by fraud or collusion. Most undoubtedly he has such right, whenever he makes out a case in which it shall appear that, by such misapplication of the funds of the estate by the administratrix, or by fraud and collusion on her part, the collection of *his* judgment debt will

be endangered, or that he will sustain some *probable future injury* to his rights or interests which he claims in and to the intestate's property, by virtue of his judgment, (for no other interest is disclosed by the record;) then, and not until then, will it be the duty of the Court to interfere in *his* behalf, and take the assets from the possession and control of the administratrix, for *his* protection and benefit. Until he makes such a case as shows that *his* rights and interests in and to the property of the estate are in danger, on what principle ought the Court to interfere in *his* behalf? Other persons having interests and rights in the estate, may never choose to complain. Inasmuch, therefore, as the complainant does not allege that he *fears* any *loss* or *injury* in not being able to collect *his debt*, but on the contrary, from his own showing, it appears that he has an ample Common Law remedy, to enforce its collection out of the intestate's property in the hands of the administratrix, we think the application for the appointment of a receiver by the Chancellor, was properly refused. Let the judgment of the Court below be affirmed.