162 ALABAMA.

City Council of Montgomery v. The State, ex rel. Dickerson et al.

## CITY COUNCIL OF MONTGOMERY *vs.* THE STATE, EX REL. DICKERSON ET AL.

[BILL IN EQUITY TO ENJOIN COLLECTION OF SPECIAL TAX BY MUNICIPAL CORPORATION.]

1. *Construction of act of Feb.* 24, 1860, *authorizing city of Montgomery to aid South and North Alabama railroad.*—The act " to authorize the city of Montgomery to aid in the construction of the South and North Alabama railroad ", approved February 24, 1860, which authorizes the corporate authorities of said city, " in such manner as they may deem expedient, *to take the sense of the holders of real estate in said city,* upon the proposition to raise by tax upon real estate " a specified sum, to be invested in stock of said railroad company, requires that the sense of *all* the holders of real estate in the city shall be ascertained, by an expression of their wishes *per capita,* before the proposed tax can be levied: an election, held under an ordinance of the corporate authorities, by which it is provided that the vote shall be taken *pro rata* according to the value of the real estate owned by the respective voters, " *each voter being allowed one vote for every hundred dollars of assessed real estate owned by him*", is not a compliance with the terms of the act; and although it appears, from the register kept by the managers of the election, that, of all the persons who voted at such election, a majority in number voted for the tax, this does not cure the defect in holding the election on illegal principles, which may have prevented persons from voting.

APPEAL from the Chancery Court at Montgomery. Heard before the Hon. N. W. COCKE.

THE bill in this case was filed in the name of the State, on the relation of L. H. Dickerson, Thos. O. Glasscock, and others, citizens and owners of real estate in the city of Montgomery, against the corporate authorities of said city, to enjoin and restrain the collection of a special tax, which the defendants had assessed, and were about to collect, under the authority of an act of the legislature, and an election held under the authority supposed to be conferred by that act. The act referred to may be found in the Session Acts of 1859–60, (pp. 193–4,) and is in the following words :

"An Act to authorize the city of Montgomery to aid in the construction of the South and North Alabama railroad." Approved February 24, 1860.

"Section 1. Be it enacted", &c., "That the municipal authorities of the city of Montgomery are hereby authorized, in such manner as they may deem expedient, to take the sense of the holders of real estate in said city upon the proposition to raise by tax upon real estate, not to exceed two per cent. per annum, the sum of three hundred thousand dollars, to be invested in stock of the South and North Alabama Railroad Company.

"Section 2. Be it further enacted, That if the holders of real estate shall decide in favor of the said tax, it shall then be lawful for the said city authorities to prescribe and direct the manner in which scrip shall be issued to the persons taxed, as evidence of the amount of taxes paid by them ; which said scrip shall be convertible into stock of said road, under such rules and regulations as the said railroad company may prescribe.

"Section 3. Be it further enacted, That any real-estate owner shall have the right to prepay his taxes for two or more years at his pleasure, taking the existing assessment as the basis, and shall be allowed a reduction, upon the principles of discount that prevail in banking operations, on making any prepayment, and be entitled to scrip accordingly.

"Section 4. Be it further enacted, That all laws repugnant to the provisions of this act are hereby repealed."

To carry out the provisions of this act, and to ascertain the sense of the holders of real estate in the city on the proposed tax, the corporate authorities of the city, on the 19th March, 1860, adopted certain resolutions, providing for the holding of an election; and the mayor of the city, by an advertisement published in the city newspapers, gave notice of the intended election. The said resolutions and advertisement were in these words :

" Whereas, the legislature of Alabama, at its recent session, passed an act relative to aiding the South and North

Alabama railroad, which law requires action of the city council to make it binding and of full force : *Therefore be it resolved,*

"1. That the mayor be authorized to issue his proclamation for an election of the real-estate owners of this city, to be held on Saturday, the 31st inst., to decide *pro* or *con.* the question of taxation by the city for the benefit of the South and North Alabama railroad, as *per* the recent act of the legislature, entitled "An act to authorize the city of Montgomery to aid in the construction of the South and North Alabama railroad'.

"2. That all real-estate owners, residents or otherwise, of the age of twenty-one years, shall be entitled to vote in said election, in person, or by proxy ; and all minors, owning real estate within the city, shall be represented by their respective guardians, voting in their stead ; and the administrator, executor, or executrix of any estate, shall be entitled to vote on the real estate they represent in trust.

"3. That the vote in said election shall be taken *pro rata,* according to the present assessed value of the real estate each voter may own ; each voter being allowed one vote for every one hundred dollars of assessed real estate owned by such voter ; and if said election shall decide in favor of this tax, then the city council is authorized and hereby instructed to levy the full tax of two per cent. *per annum* on all real estate, in accordance with, and for the speedy promotion of the end for which said act was passed."

### "Railroad Tax."

"Notice is hereby given, that an election will be held at the court-house, on Saturday, the 31st instant, under the management of I. W. Roberts, B. R. Jones, and W. P. Vanderveer, to take the sense of the owners of real estate in the city of Montgomery, upon the proposition to raise by tax upon real estate the sum of three hundred thousand dollars, to be invested in stock of the South and North Alabama Railroad Company. The election will commence at 9 o'clock *a. m.,* and close at 4 o'clock, *p. m. ;* and will,

in all respects, be governed by the regulations prescribed in the following preamble and resolutions, adopted by the city council on the 19th instant."

(Signed by the mayor, and dated March 20, 1860.)

The election was held on the appointed day. The managers reported, "that thirty thousand seven hundred and thirty-four votes were cast in favor of taxation, and six thousand four hundred and thirty votes against taxation"; and their return contained a list of the names of the persons who voted, and the number of votes cast by each in his own right, or as agent, guardian, &c., showing that two hundred and forty-three persons voted for the tax, in person or by proxy, while one hundred and two voted against it. The city council passed resolutions, a few days after this election was had, providing for the prompt payment and collection of the tax. The bill sought to enjoin the collection of the tax, on the ground that the election was not held in accordance with the requirements of the act of the legislature, and that the act itself was unconstitutional and void. The defendants filed an answer, admitting all the facts alleged in the bill, as above stated, and insisting on the validity of the act and proceedings under which they were seeking to collect the tax; and they also demurred to the bill, for want of equity. The chancellor overruled the demurrer, and, on final hearing, rendered a decree for the complainant; and his decree is now assigned as error.

GOLDTHWAITE, RICE & SEMPLE, for appellants.
JNO. A. ELMORE, and JOS. S. WINTER, contra.

A. J. WALKER, C. J.—It is certain that the taking "of the sense of the holders of real estate" in the city of Montgomery was an indispensable condition precedent to the power of taxation by the corporation of that city, under the act approved 24th February, 1860.—Pamphlet Acts of '59–60, page 193. The corporation had no authority to

166
ALABAMA.

City Council of Montgomery v. The State, ex rel. Dickerson et al.

tax, until it was sanctioned by the sense of the holders of real estate, taken " as required by the law." The want or absence of this preliminary step is a complete negation of the power to tax. The power was dependent, not upon the fact that the sense of the real-estate holders favored its exercise, however clearly that fact might be now proved, but upon the condition, that such "sense" had been *taken*, and that the expression of it was in favor of the power. It is, therefore, not necessary for those who assail the tax imposed, to show that the sense of the real-estate holders was opposed to the tax. The want of power to levy the tax is shown, whenever it appears that the condition precedent was not performed. The equity of the complainant's bill is maintained, if it is averred and proved, that the imposition of the tax was not preceded by, and based upon, the requisite preliminary step.

The bill avers, that a certain ordinance, consisting of three sections, was passed by the city council; that, in pursuance of that ordinance, an election was held; and that the city council, acting on the presumption that the election was legal and the sense of the holders of real estate in favor of the tax, proceeded to collect the tax. We think it thus appears with reasonable certainty, that the election in pursuance of the ordinance was the thing done, upon which the city council predicated its authority to levy the tax, and relied as a fulfillment of the condition precedent. To intend against the pleader that something else was done, which amounted to a taking of the sense of the real-estate holders, would be extending the intendments against the pleader with unreasonable severity. If, then, the election, held in pursuance of the ordinance above named, was not, within the meaning of the statute, a taking of the sense of the real-estate holders in the city, the absence of the necessary condition precedent to the exercise of the power of taxation is averred, and the tax is illegal. Therefore, the equity of the bill hinges upon the question, whether the sense of the proper class of persons was taken by the election. The right to relief

upon the proof depends upon the same question; and the treatment of the question as it arises upon the proof will only be varied so far as to bring to view some new facts, giving rise to additional questions urged on the part of the defendant. A consideration of the case upon the proof will, therefore, comprehend all the points to be decided. We will, therefore, proceed to inquire, whether the city council have taken the sense of the real-estate holders, looking to the facts alleged in the bill, and the other material facts proved.

Authority is given by the first section of the act of 1860 to the municipal authorities of the city of Montgomery, "in such manner as they may deem expedient, to take the sense of the holders of real estate in said city, upon the proposition to raise by tax upon real estate, not to exceed two per cent. *per annum*, the sum of three hundred thousand dollars," &c. The expression "holders of real estate" is descriptive of the persons whose sense was to be taken. It includes all persons who were in fact holders of real estate. The sense of those persons could only be determined by an expression of their wishes *per capita*. It could not be determined by the result of an election where each individual was allowed a vote for each hundred dollars in value of his real estate. If it could, we might have the absurdity of an expression of the sense of a thousand holders of real estate, by the votes of a hundred of the number, who happened to own more land in value than all the rest. The authority given was to take the sense of the individuals who belonged to the particular class of persons, on terms of equality, without any discrimination based upon the value of real estate owned. An enlarged discretion as to the manner of taking "the sense" is certainly given; and that may authorize a regulation as to whether the vote should be *viva voce* or by ballot, and as to the places and time of voting, and, perhaps, as to whether an election should be held, or the votes privately gathered by an appointed agent. There are, doubtless, other matters which fall within the scope of the discretionary control over the manner of tak-

ing "the sense." But that control extends to the manner. It cannot justify any discrimination among the persons belonging to the particular class. The sense of that class is to be taken, and the discretion is confined to the manner in which that thing is to be done.

By the third section of the ordinance of the city council already noticed, it was directed, that the vote should be taken *pro rata*, according to the assessed value of the real estate of the respective voters, (each having one vote for every hundred dollars in value of his real estate,) and that the tax should be levied if the decision by the election so held should be in favor of it. The decision at such an election, by a majority of votes in favor of the tax, would only indicate that the persons who owned a major portion in value of the real estate were in favor of the tax—not that the sense of a majority of the persons who composed the class described as holders of real estate was in favor of it. Understanding the import of the expression in reference to taking the sense of the real-estate holders as has been above stated, we must decide, that such an election would not be a taking of the sense of such persons. Therefore, the bill, in showing that the tax was levied in presumption of the legality of such an election held in pursuance of the ordinance above stated, negatives the authority to impose the tax. Such an election, tested by the law in reference to which it was held, was illegal, and was no ascertainment of the sense of the designated class, and no fulfillment of the condition precedent prescribed by the statute.

The managers of the election registered the names of the different persons who voted at the election, and stated opposite to each name the number of votes cast, and the side upon which they were cast. It is contended for the appellant, that an inspection of the returns by the managers shows that a majority of the persons, counted *per capita*, who voted at the election, were in favor of the tax. We are not sure that the position is correct; but, conceding it to be so, it only establishes the fact, that a

majority of the persons who voted were in favor of the tax. It falls far short of demonstrating that the sense of the holders of real estate in the city was taken, and that it was in favor of the tax. An election was, as we concede, a legal mode of taking the sense of the designated class of persons; and when a legal and properly appointed election is held, the sense of a majority of those who vote must be deemed the sense of a majority of those entitled to vote. Those who do not vote must be understood to consent to abide the decision of those who do.—Ang. & Ames on Corp. 114, § 127; Grant on Corp. 204; *First Parish in Sudbury v. Starns*, 21 Pick. 154; Wilcock on Corp. § 546; *Oldknow v. Wainwright*, 1 W. Bla. 229; *Rex v. Foxcroft*, 2 Burr. 1017. But this principle can only apply, when the election is legally proposed.—*Rex v. Monday*, 2 Cow. 530; Ang. & Ames on Corp., *supra*; Grant on Corp. 204–208; Wilcock on Corp. §§ 544, 545, 546.

We think it is a teaching of justice and reason, that where an election is authoritatively proposed to be held, upon principles which are illegal, and in derogation of the equality of suffrage, and which tend with reasonable certainty to prevent persons from voting, the sense of those who do vote cannot be taken to be the sense of all who are entitled to vote, and those who do not vote cannot be presumed to consent to abide the decision of those who do. Every one of the characteristics of such an election is found in the election which is under consideration. The announcement of the principles which should govern in the election was authoritative. It is not like the case of a mere ministerial officer announcing an intention to adopt some illegal regulation in the holding of an election. It is the case of a corporation, authorized at its election to take the sense of a certain class of persons, who had no opportunity to vote except as it might afforded by the corporation. The principle of a *pro-rata* vote, based upon the value of real estate, which we have already decided to be illegal, is clearly prescribed by the ordinance. The second section of the ordinance, which declares, in general terms, that all

real-estate holders should be entitled to vote, is manifestly qualified by the third section, which requires that the vote shall be *pro rata.* The managers of the election, acting under the authority bestowed by the corporation, and as its ministerial agents, could not disregard the third section, and hold the election under the principle of the second, as it would have been understood in the absence of the third. If they had done so, they would have asserted the superiority of the agent over the principal ; and it would have been an election held by them in violation of their instructions, and not an election held by the corporation through their agency. It would have been a taking of the sense of the prescribed class by the managers, and not by the corporation. The holding of the election upon the illegal plan of a *pro-rata* vote was a necessary result of the ordinance, which was promulged in advance. This illegal principle had, as we think, an obvious tendency to influence persons not to vote. It is possible that the repulsive discrimination, predicated upon the value of real estate, may have prevented persons from voting. But, without laying stress upon that view, we think the knowledge that the votes would weigh according to the value of real property, would necessarily exert some control over the conviction of the voters as to the necessity and expediency of casting their votes, and consequently over their determination whether to vote or not.

Let an extreme case illustrate. If there were a community of a hundred persons, and ten out of the hundred held the major portion of the real estate, in such an election as we are considering, the ten could control the result; and the ninety, knowing their wishes, would be indifferent about voting. The tendency of such an influence in larger communities, with less difference in the amount of real estate owned by different individuals, would be less striking, but not less real. Besides these considerations, it is not at all certain that a careful reader of the ordinance and mayor's proclamation, which preceded the election, could determine, from either or both, that his preference as an in-

dividual would be at all indicated by the register kept by the managers of the election. Indeed, it seems to have been a matter altogether incidental to the main purpose of taking the vote *pro rata*, that any indication of the vote *per capita* was made. Is it then improbable, that persons detected the obvious illegality of the principle upon which the election was held, and, deeming such an election void, abstained from voting? At least, the tendency of such a knowledge would be to render them less careful to vote, and in that way to lessen the number of votes cast.

We have been referred to many decisions, by the counsel for the appellant, in which elections were held valid, notwithstanding many irregularities occurred; but, in those cases, the irregularities supervened pending the election, and were not such as influenced the result. They afford no analogy to the question involved in this case.

We do not deem it necessary to notice any of the other questions which have been argued. We do not wish, however, to be understood as affirming that all the other grounds, upon which the validity of the tax is assailed, are untenable. We avoid all expression of opinion upon them, both because it is unnecessary, and because one of the court does not sit in the case. A grave constitutional question has been raised and ably argued. Such a question it would be improper for us to decide, in the absence of a full court, unless it was necessary to do so.

Affirmed.

STONE, J., not sitting.