# REPORTS

OF

## CASES ARGUED AND DETERMINED

### AT THE JUNE TERM, 1871.

## TRAMMELL ET AL. vs. PENNINGTON ET AL.

[BILL IN EQUITY BY TAX PAYERS TO ENJOIN COMMISSIONERS' COURT FROM SUBSCRIBING, ON BEHALF OF COUNTY, TO STOCK OF RAILROAD COMPANY, UNDER ACT OF DECEMBER 31, 1868.]

1. *Bill; motion to dismiss, for want of equity ; effect of, and how tried.*—A motion to dismiss a bill of complaint, for want of equity, admits all its statements to be true, and must be decided upon an inspection of the bill itself.

2. *Railroad company ; when not in condition to make proposal for county subscription.*—A railroad company, incorporated under the act entitled "an act to provide for the creation and regulation of railroad companies in the State of Alabama," approved December 29, 1868, (Pamph. Acts, p. 462,) is not in a condition to make a proposition for county subscriptions to the capital stock of said company, until ten per cent. of its capital stock has been subscribed, and a board of directors elected by the stockholders, and qualified, as provided by the ninth section of said act.

3. *Same ; what proposition does not confer on commissioners' court, any jurisdiction or authority to order election for subscription, &c.*—A proposition made by the original corporators named in the certificate of incorporation of such company, and not by the president and directors of said company, elected and qualified as aforesaid, is not a proposition made in substantial compliance with the first section of the act entitled "an act to authorize the several counties and towns and cities of the State of Alabama to subscribe to the capital stock of such railroads throughout the State, as they may consider most conducive to their respective interests," approved December 31, 1868, (Pamph. Acts, p. 514.) And such a proposition, so made, does not confer on the commissioners' court of a county any jurisdiction or authority to order an election for such proposition to the qualified electors of said county, for their acceptance or rejection.

4. *Same ; what orders are void.*—An order made on such a proposition is void, and an election held under such an order is invalid, and gives to the commissioners' court no authority to make, in behalf of said county,

a subscription to the capital stock of the railroad company by whom such proposition is made, nor to issue and deliver to such railroad company, in payment of such subscription, the "bonds of the county," as provided by the sixth section of said act of December 31, 1868.

5. *Commissioner's court, jurisdiction of ; everything necessary to sustain must appear affirmatively, as a general rule.*—The commissioners' court is a court of special and limited jurisdiction, and, as a general rule, nothing will be presumed in favor of the jurisdiction of such a court ; but everything necessary to sustain it must show affirmatively on the face of the record ; therefore, where the judge of probate and two of the commissioners of a county meet together at the court house, without the notice required by section 830 of the Revised Code, and call such meeting together a special term of the commissioners' court, and make an order to submit a proposition of a railroad company for a subscription, by said county, to the capital stock of said company, to the qualified electors of said county, for their acceptance or rejection ; such an order is made without jurisdiction, is *coram non judice*, and void, and an election under such an order is invalid, and confers on the commissioners' court no authority to subscribe to the capital stock of said company, or to issue the bonds of the county in payment of stock so subscribed.

6. *Original corporators of railroad company ; proposition by, to commissioners' court, for subscription, &c.; not in substantial compliance with provisions of act of December 31, 1866, and therefore not legalized by the act of March 1, 1871.*—A proposition made by the original corporators of a railroad company, and not by the president and directors, and an order made by the judge of probate and two of the commissioners, &c., as aforesaid, and an election held under such an order, are not "acts and things done and performed in substantial compliance" with the provisions of the said act of Dec. 31, 1860 ; and, therefore, are not legalized, ratified and confirmed by the act entitled "an act to legalize, ratify and confirm all acts and things, of every kind, heretofore done and performed in this State, in substantial compliance with an act of the general assembly of Alabama, entitled 'an act to authorize the several counties and towns and cities of the State of Alabama to subscribe to the capital stock of such railroads, throughout the State, as they may consider conducive to their respective interests;'" approved March 1, 1870.—Pamph. Acts 1869–70, p. 286. The said act of March 1, 1870, as it only legalizes, ratifies and confirms "acts and things" done and performed in substantial compliance with the said act of December 31, 1868, is not unconstitutional and void.

APPEAL from Chancery Court of Lee and Chambers. Heard before Hon. B. B. McCRAW.

THIS was a bill in equity filed by Trammell, the appellant, and others, tax-payers and freeholders of the county of Chambers, in behalf of themselves and all other residents and tax-payers of said county, who would contribute

to the costs of suit, against John Appleby, probate judge and member of commissioners court, and the other persons composing said commissioners court of Chambers county, and against John L. Pennington, claiming to be President, and other persons claiming to be directors of, and who were the original incorporators of, the Eufaula, Opelika, Oxford & Guntersville railroad company, and sought to enjoin the commissioners court from making, on behalf of the county, a subscription of one hundred and fifty thousand dollars of county bonds to the capital stock of said company, and from issuing and delivering said bonds to said railroad company in payment of such subscription.

The bill alleges that Pennington and the other incorporators made a certificate and drew up articles of incorporation for the purpose of "constructing a first class rail road," in pursuance of an act entitled "An act to provide for the creation and regulation of railroad companies in the State of Alabama," approved December 29th, 1868, which was duly acknowledged and certified, and filed with the Secretary of State; that the "corporators met together, and by some resolution appointed John L. Pennington president, and the other corporators directors of said corporation;" that no stock has ever been subscribed, taken, or paid in to the capital stock of said railroad company; that there are not now, and never have been, and were not at the date of the application, (hereinafter described, to the commissioners for subscription to stock in said company,) any stockholders in said corporation; that no books of subscription were ever opened, &c.; that no stock has ever been called in or paid for, and no directors elected by the stockholders.

The third paragraph of the bill is as follows: "Your orators further state, on information, that on or about the 17th day of March, 1869, an instrument in writing was presented to the Hon. John Appleby, judge of probate of the county of Chambers, a copy of which, marked "Exhibit B," is hereunto annexed and made a part hereof. Your orators aver on advice, information and belief, that said instrument marked "Exhibit B,"

is not a proposal within the meaning and intent of the act therein referred to, to said county of Chambers, for the following reasons : 1st, There was no president or directors of said railroad company ; 2d, Said instrument does not propose or purport to be made by the president and directors, but by direction of the corporators ; 3d, Said instrument is not addressed to the commissioners court, or court of county commissioners of the county of Chambers, but to " John Appleby, chairman of the board of county commissioners of Chambers county ;" 4th, No proposal to the county commissioners was ever made."

The proposal marked " Exhibit B " is addressed, " To the Hon. John Appleby, chairman of the board of county commissioners of Chambers county," and begins as follows : " I am directed by the corporators of the Eufaula, Opelika, Oxford & Guntersville railroad company to make an application to the board of county commissioners of the county of Chambers, as provided in the act [here follows its title,] requiring said county commissioners to order an election for subscription," &c., &c., and is signed—

" J. L. PENNINGTON, President.

"Directors, { W. H. SMITH,<br>WM. T. BROWN,<br>J. J. HINDS,<br>GEO. F. HARRINGTON."

The fourth paragraph alleges that Hon. John Appleby, judge of probate, and two of the county commissioners, met together at a special term on the 22d day of March, 1869, in the court house of Chambers county, and acting upon said paper, (exhibit B,) ordered an election to determine upon said proposition for subscription, &c.; that this assemblage did not constitute a legal court; that said assembly was not held at a time appointed by law for a regular term, and that no notice had been given by publication or posting up notices at the court house door, &c., as required by law, ten days previous to the meeting of said special term.

The remaining paragraphs of the bill allege the holding of the election for the purpose of determining said propo-

sition for subscription, and the result thereof in favor of subscription, &c.

It is further alleged in the bill, that the probate judge and court of county commissioners deem the proposal marked "Exhibit B" to be accepted by the voters of Chambers county, and said county thereby bound to a subscription to the capital stock of said railroad company, &c., in accordance with the provisions of section six of the " act to authorize the several counties, towns and cities of the State of Alabama to subscribe to the capital stock of such railroads throughout the State as they may consider conducive to their respective interests;" approved December 31st, 1868, and intends, and declares its intention, and threatens, to issue said bonds to said railroad company, and to levy and assess a tax, as required by said act, to meet the interest falling due on said bonds, &c., and that the said court of county commissioners will proceed to issue said bonds, and levy and assess and collect said tax, unless restrained by injunction. The remainder of the bill is devoted to statements of errors, irregularities and defects in the manner of conducting and holding said election, the way in which the result thereof was arrived at and declared, and the rejection of votes, &c. It is unnecessary, in the view taken of the case by the court, to set out the particular statements and allegations of this part of the bill.

On the motion of the appellees, the chancellor dismissed the bill for want of equity, and hence this appeal.

WALKER & MURPHEY, and WATTS & TROY, for appellants.
E. G. RICHARDS, and W. H. BARNES, contra.

[This case was very elaborately argued at the bar by the counsel, but the Reporter, notwithstanding diligent search, has been unable to obtain the briefs.]

PECK, C. J.—The bill in this case is filed to enjoin the commissioners court of Chambers county from subscribing, in behalf of said county, to the capital stock of the Eufaula, O pelika, Oxford & Guntersville railroad company,

and from issuing and delivering to said railroad company, in payment of said subscription, the bonds of said county, under the act entitled "An act to authorize the several counties and towns and cities of the State of Alabama to subscribe to the capital stock of such railroads throughout the State as they may consider most conducive to their respective interests," approved December 31st, 1868.— Pamph. Acts, p. 514.

Much of the argument of appellants' counsel is directed to the question as to the constitutionality of said act, and two other acts, the one entitled, "An act to provide for the creation and regulation of railroad companies in the State of Alabama," approved December 29th, 1868, (Acts, p. 462,) the other entitled, "An act supplementary to the corporation laws of Alabama," approved November 18th, 1868, (Acts, p. 349); but, on looking into the bill, no statement or charge is found assailing the constitutionality of said acts, or either of them. Without this, we hold it improper to decide that question. The presumption is always in favor of the constitutionality of legislative acts, and a court, as a general rule, should not entertain or pass upon a constitutional question, unless directly made upon the record, and even not then, unless it is necessary to the determination of the cause. It is but due respect to a co-ordinate department of the government, to discuss constitutional questions only when it becomes necessary to do so.—*Stein v. Mayor and Aldermen of Mobile*, 24 Ala. 591 ; *Mobile & Ohio Railroad Co. v. The State*, 29 Ala. 573 ; *Gibbons v. Mobile & Great Northern Railroad Co.*, 36 Ala. 410 ; Cooley's Const. Lim. 163 ; *City Council of Montgomery v. The State, ex rel., &c.*, 38 Ala. 162.

The equities of the bill are made to rest not upon the unconstitutionality of these acts, but mainly, if not wholly, upon the alleged failure of the defendants to comply with what the said acts require, to authorize the court of county commissioners, on behalf of said county, to subscribe to the capital stock of said railroad company, and to pay for the same in the bonds of the county, to be issued by said court.

The only authority of the county to subscribe for the

capital stock of said railroad company, is to be found in the said act of the 31st of December, 1868. This authority is, in its very nature, a special authority, and must be followed in all essential particulars, or the subscription will be void.—Cooley's Const. Lim. 215, and note 1.

The plaintiffs' bill, before answer filed, on defendants' motion, was dismissed for want of equity. Such a motion admits all the statements of the bill to be true, and is necessarily decided upon an inspection of the bill itself.— *Bryant et al. v. Peters et al.,* 3 Ala. 160.

This being so, the correctness of the chancellor's decree dismissing the bill must be determined by an examination of the statements of the bill, taking them to be true, in connection with the provisions of the said acts of the legislature above referred to ; and these acts, which were all passed at the same session, must be considered together, as having reference to each other, and as parts of one system, and disclosing and prescribing the terms and conditions upon which, and in what manner, the several counties of the State might become subscribers to the capital stock of railroads, and the way and means in which the payment of such subscriptions, when made, should be provided for. These terms and conditions were, no doubt, believed to be necessary, and intended to operate for the protection and security of the people of the several counties of the State, and to guard against hasty and inconsiderate subscriptions that might otherwise prove detrimental, if not ruinous, to the prosperity and best interests of the country.

The first section of the said act of the 29th of December, 1868, provides that " any number of natural persons, not less than five, may become a body corporate, with all the rights, powers and privileges conferred, and made subject to, all the restrictions of this act." The second section prescribes what must be done by these persons to enable them to become a body corporate, and provides that " any number of persons as aforesaid, associating to form a company for the purpose of constructing a railroad, shall, under their hands and seals, make a certificate which shall specify as follows : 1st, The name assumed by such

company, and by which it shall be known ; 2d, The names of the place of the termini of said road, and the county or counties through which said road shall pass; 3d, The amount of capital stock necessary to construct such road. Such certificate shall be acknowledged before a justice of the peace, and certified by the clerk of the circuit court, and shall be forwarded to the Secretary of State, who shall record and carefully preserve the same in his office, and a copy thereof, duly certified by the Secretary of State, under the great seal of the State of Alabama, shall be evidence of the existence of such company."

When this is done, then the persons named are, by section third, declared to be a body corporate, and authorized to carry into effect the objects named in said certificate, in *accordance with the provisions of said act*. How these objects are to be carried into effect, will be seen by looking into the other parts of said act.

Section five enacts that " the capital stock of such company shall be divided into shares of fifty dollars each, and consist of such sum as may be named in the certificate."

By section nine, it is provided that the persons named in the said certificate of incorporation, or any three of them, shall be authorized to order books to be opened for receiving subscriptions to the capital stock of said company; that as soon as ten per centum of the capital stock shall be subscribed, they may call the stockholders together for the purpose of choosing seven directors ; that the persons named in such certificate, or such of them as shall be present, shall be inspectors of such election, and certify what persons are elected directors, and appoint the time and place for their first meeting ; that a majority of said directors shall form a board. Said directors are then to choose one of their number president, and before they enter on the discharge of their duties, each one is required to take an oath or affirmation to discharge his duties faithfully ; and said directors are declared competent to fill vacancies in their board, make by-laws, and *transact all the business of the corporation*. From this time we lose sight of the persons named in said certificate, and they cease to be further mentioned in said act · their special powers and

duties are at an end, and thenceforth all the business of the corporation is committed to its board of president and directors. When the company is thus organized, and not before, it is in a condition to seek and propose for county subscriptions to its capital stock. Until the capital stock is divided into shares, as prescribed in section five, there can be no subscriptions by either individuals or counties By an examination of the first paragraph of the bill, and of the certificate of incorporation, made an exhibit as a part thereof, I think it sufficiently appears that the persons therein named, by virtue of the three first sections of the said act, were constituted a body corporate, by the name of "The Eufaula, Opelika, Oxford & Guntersville Railroad Company." This fact does not seem to be called in question, either in this or any other paragraph of the bill.

The second paragraph states that said corporators named in said certificate of incorporation, met together, and by some resolution appointed John L. Pennington, one of their number, president, and the others of said corporators' directors of the corporation; and plaintiffs aver, on information and belief, that no stock had been subscribed, taken, or paid in the capital stock of said company; that there was not then, nor was there at the date of the application thereinafter named, and never had been, any stockholders of said railroad company; that said corporators had never opened, or caused to be opened, any books for the subscription of stock to said company; and that no stock in the same had ever been called for, or paid, and that no directors had ever been elected by stockholders in the said railroad company.

By the third paragraph, the plaintiffs state that on or about the 17th day of March, 1869, an instrument in writing was presented to the Hon. John Appleby, judge of probate of said county of Chambers, a copy of which is exhibited and made a part of the bill of complaint. This paper commences as follows:

"Application of the *corporators* of the Eufaula, Opelika, Oxford & Guntersville railroad company to the commisioners court of the county of Chambers, for a county subscription.

44

"Hon. John Appleby, chairman of the board of county commissioners of Chambers county."

And is signed—

"JOHN L. PENNINGTON, President.

WILLIAM H. SMITH,  
WILLIAM T. BROWN,  } Directors."  
J. J. HINDS,  
GEORGE F. HARRINGTON,

This paragraph is somewhat loosely and inartificially drawn, but it amounts to a charge that said instrument in writing was not a proposal, within the meaning and intent of said act therein referred to, to said county of Chambers, for a subscription to the capital stock of said company; that no directors had been elected by stockholders, and that said proposal was made by the corporators named in said certificate of incorporation, and not by the president and directors of said company.

Now, bearing in mind that the only authority counties, as municipal corporations, have to subscribe to the capital stock of railroad companies, is a special legislative authority, which must be followed in all essential particulars, or the subscription will be void, (Cooley's Const. Lim. 215, *supra*,) let us examine the provisions of the act of the 31st December, 1868, from which this authority is derived, to see whether the proposition above referred to was sufficient to authorize the commissioners court of said county of Chambers to order an election, and to submit said proposition of said railroad company to the qualified electors of said county, for their acceptance or rejection; for, if not, then the order of said court, based upon it, and the election held under said order, must be held to be void, and no bonds of the county can be issued. The first section provides that "any and every county of the State of Alabama, situate upon, or adjacent to, the main or branch line of the railroads of this State, as such lines are, or may be located by the companies owning and controlling said roads respectively, is authorized and empowered to subscribe for, take and pay for, the capital stock of such of the railroad companies of the State, as they may deem most conducive to their respective interests, as hereinafter

provided. The said railroad companies, by their *president and a majority of their directors*, may, in writing, propose to any such county that it shall subscribe for, and take, an amount of their capital stock, to be named in said proposal, at a certain price per share, and pay for the same in the bonds of the county, as shall be set forth in said proposal." The second section is as follows : " That upon the application of *the president and directors of any of the railroad companies of Alabama*, to the commissioners court of any county of the same, submitting proposals for a county subscription to the capital stock of said railroad company, the commissioners court of said county in which application is made, is hereby authorized and required to order an election within sixty days after the meeting of said court, to submit the proposition of said railroad company to the qualified electors of said counties, for their acceptance or rejection." The plain letter of the first section of this act requires the proposal to be made by the president and directors of the company making the same. No other persons have any authority to make it ; and without a proposal so made, the commissioners court of no county has or can have any authority to order an election, " to submit a proposition to the qualified electors of their county, for acceptance or rejection." Such a proposition must be regarded as *in the nature of a jurisdictional fact*, and must be made by the persons named, and conform substantially with the provisions of said section ; otherwise, the commissioners court can acquire no jurisdiction to take any action in the premises.

Taking the second and third paragraph of the bill to be true, I think it can hardly be doubted that the proposition therein mentioned was not made by the president and directors of said company ; that, in truth and fact, there were no such persons in existence ; that no directors had been elected by stockholders of said company ; but, on the contrary, the original corporators had assumed to themselves the authority to make the proposition in their own names. The mere signing themselves president and directors does not better the case. By the ninth section of the act of the 29th of December, 1868, above referred to,

directors can only be elected by stockholders of the company. The second paragraph of the bill states that no stock had been subscribed; that there were, in fact, no stockholders, and that no directors had been elected. And the third paragraph says the application was made by the corporators of the Eufaula, Opelika, Oxford & Guntersville railroad company, and not by the president and directors of said company.

As we have seen, a railroad company created and organized under said act of the 29th of December, 1868, is in no condition to propose for county subscriptions, until a certain portion of its capital stock is subscribed, and a board of directors is elected, by whose authority all the business of the corporation is to be transacted. Therefore, in the posture of the case, when the motion to dismiss the bill for want of equity was made, I have no hesitation in holding that the proposition stated in the bill of complaint conferred no jurisdiction on the commissioners court to make the order for an election; and that the order made, and the election held under it, should have been regarded as invalid; in other words, the motion to dismiss for want of equity should have been overruled.

The plaintiff's bill proceeds further to state that an election was held under said order, and that the result of said election was declared by said probate judge to be in favor of subscription, by a majority of sixty-five votes; that many irregularities and errors intervened in conducting said election; and that, in declaring the result thereof, the said judge erroneously excluded the votes cast at several precincts, and improperly and erroneously rejected and refused to count seventy legally qualified and registered votes actually and legally cast against subscription, at two precincts, which, if counted, as they should have been, the result of said election would have been declared against subscription, whereby the expressed will of the people of said county was defeated.

In the present aspect of the case, I decline to consider the questions growing out of these statements of the bill. The view taken of it renders it unnecessary to do so. The decree of the chancellor must be reversed on the errors

already considered, unless, as the appellees insist, these and all the other errors charged in the bill are cured by a subsequent act of the legislature.

After the decree dismissing the plaintiff's bill was rendered; and after the case was in this court on the plaintiff's appeal, to-wit, on the first day of Merch, 1870, an act was passed entitled " an act to legalize, ratify and confirm all acts and things, of every kind, heretofore done and performed in this State, *in substantial compliance* with an act of the general assembly of Alabama, entitled 'an act to authorize the several counties and town and cities of the State of Alabama to subscribe to the capital stock of such railroads, throughout the State, as they may consider most conducive to their respective interests,' approved December 31, 1868."

This act consists of one section, and is as follows, to-wit : " Be it enacted by the general assembly of Alabama, That all orders, acts, proceedings, elections, issues of bonds, payment of moneys, liens, assessments, collection of taxes, all sales of property to collect taxes, subscriptions to the capital stock of railroads, and all acts and things of every klnd, heretofore done and performed in this State, for railroad purposes, *in substantial compliance* with the provisions of an act of the general assembly of Alabama, entitled 'an act to authorize the several counties and towns and cities of the State of Alabama to subscribe to the capital stock of such railroads, throughout the State, as they may consider most conducive to their respective interests,' approved December 31, 1868, be, and the same are, hereby legalized, ratified and confirmed, in all respects," approved March 1, 1870.—Pamph. Acts, 1869–70, p. 286.

On the part of the appellees, it is insisted and pressed upon the court, that this act cures all the irregularities, defects, and errors, stated and set up in the bill of complaint, as grounds of equity and reasons why the said election should be held invalid, and said commissioners court enjoined from subscribing to the capital stock of said railroad company, and from issuing, or causing, or procuring, the bonds of the county to be issued in payment of the same. And it is also contended that it makes no differ-

ence that the said act was passed after the cause was in this court on appeal; that this court is bound to decide the case according to the law in force when the decision is made.

On the other hand, the appellants attack this act as unconstitutional and inconsistent with public policy; but contend, that if the said act be held to be valid, it is inapplicable to this case, because the acts and proceedings complained of were not "done and performed" in substantial compliance with the act of the 31st of December, 1868, therein referred to.

Mr. Cooley (p. 370,) says "there is no doubt of the right of the legislature to make laws which reach back to, and change or modify, the effect of prior transactions; provided retrospective laws are not forbidden, eo nomine, by the State constitution; and provided, further, that no other objection exists than their retrospective character." And on page 371, he says: "a retrospective statute, curing defects in legal proceedings, where they are of the nature of irregularities only, and do not extend to matters of jurisdiction, is not void on constitutional grounds."

The errors we have considered have direct reference and extend to matters of jurisdiction; that the proposal and application to be made to a county, by a railroad company, for a subscription to its capital stock, under the act of the 31st of December, 1868, is a jurisdictional fact, and unless made by its president and a majority of its directors, as required by said act, the commissioners court of the county acquires thereby no jurisdiction to order an election. So, too, the application, if in proper form, and made by the proper persons, and in itself altogether correct, yet the commissioners court, at a special term, not held by direction of the judge of probate, and not convened in conformity to the provisions of section 830 of the Revised Code, without ten days' notice by advertisement in some newspaper in the county, or by posting up at the court house door and two other public places in the county, notice of the same, would have no jurisdiction to entertain such a proposition and order an election to submit it to the qualified electors of the county, for their acceptance or

rejection. Therefore, an order made at such an unauthorized term, rests upon no warrant of law, and is *coram non judice*, and void.

The court of county commissioners is a court of special and limited jurisdiction, and, as a general rule, nothing will be presumed in favor of the jurisdiction of such a court, but everything necessary to sustain it must affirmatively appear on the face of its record.—*Whriteman v. Carsner*, 20 Ala. 446.

The act of the first of March, 1870, rightly interpreted, is not, as it seems to me, obnoxious to the constitutional objections made against it by appellants' counsel.

It does not claim to legalize, ratify and confirm only such orders, acts and proceedings, &c., as have been done and performed, *in substantial compliance* with the provisions of said act of the 31st of December, 1868. Such an act the legislature may unquestionably pass; there is nothing in our constitution prohibiting it from doing so.

After the best reflection I have been able to give this question, I am satisfied that no substantial objections exist to the validity of said act of the first of March, 1870, but that the errors considered in this opinion, and upon which it is made to rest, are not embraced within the purview and meaning of said act, and are not cured by it. If they were, I think the current of the authorities is in favor of considering such an act obligatory upon an appellate court, and requires a case to be decided according to the law in force when the decision is made.—Cooley, 381, and note 5.

Let the decree of the chancellor be reversed, and the cause be remanded for further proceedings. The appellees will pay the costs.