# Fielder v. Montgomery & Eufaula Railroad Company.

### Bill in Equity to enjoin Municipal Tax in Aid of Railroad.

*Subscription by town or county in aid of railroad; validity of.* — The act approved December 31, 1868, authorizing counties, cities, and towns to subscribe for stock in railroad companies, on an affirmative vote of the citizens at a special election held for that purpose (Sess. Acts 1868, p. 514), having been held by this court to be a constitutional exercise of power by the legislature; a subscription of stock by a municipal corporation, made in response to a proposition from a railroad company duly organized, and on an affirmative vote of the citizens, at a special election held in substantial compliance with the terms of the statute, cannot be held invalid, nor a tax levied to pay the interest on its bonds enjoined, at the suit of citizens and tax-payers, on account of irregularities, not fraudulent, in any of the proceedings preceding the subscription, which were not objected to before the subscription was made and the bonds issued; such, for instance, as an informality in the proposition of the railroad company, or the want of an exact conformity between the proposition and the subscription, or the failure of the municipal authorities to enter their action on their minutes within 'ten days, or to hold the election within thirty days.

APPEAL from the Chancery Court of Bullock.

Heard before the Hon. B. B. McCRAW.

The bill in this case was filed on the 13th July, 1871, by James H. Fielder and others, citizens of Bullock county, and tax-payers in the town of Union Springs, against the corporate authorities of the said town, and the Montgomery and Eufaula Railroad Company. Its object was to enjoin the collection of a special tax, levied by the corporate authorities of said town to pay the interest on certain bonds, amounting to $25,000, which had been executed by said municipal corporation, and delivered to said railroad company, under the town's subscription to the capital stock of the railroad company. Copies of the proceedings of the two corporations were made exhibits to the bill and answer, and were all the evidence in the cause. The resolutions of the railroad company, under which a proposition was submitted by its president to the corporate authorities of the town, were as follows: " Montgomery, Ala., January 22, 1869. At a meeting of the board of directors of the Montgomery and Eufaula Railroad Company, this day held in pursuance to call, there were present, L. Owen, president, B. Hall, Josiah Morris, T. Joseph, C. L. Matthews, B. H. Micou, and A. F. Given, directors. A quorum being present, the meeting was called to order, and the following preamble and resolutions were offered, which were adopted unanimously: ' Whereas, the best interests of this company demand the speedy construction of this road to Union Springs, and, for this purpose, it becomes necessary to increase the capital stock of the company; therefore, be it resolved, that the president be, and he

is hereby, authorized, empowered, and directed to call upon the intendant and town council of Union Springs, in their corporate capacity, to subscribe to the capital stock of this company for the amount of twenty-five thousand dollars, and to pledge to said intendant and town council the faithful application of said fund towards the construction of that portion of the road between Mitchell's Station and Union Springs."

"Office of Montgomery and Eufaula Railroad Company, March 2, 1869. At a meeting of the board of directors, held this day, L. Owen, A. F. Given, B. H. Micou, C. L. Matthews, Thomas Joseph, Josiah Morris, and J. C. B. Mitchell being present, it was unanimously resolved, that the president be, and he is hereby, authorized and directed to solicit from the intendant and town council of Union Springs, in their corporate capacity, a subscription to the capital stock of this company for the amount of twenty-five thousand dollars, and to pledge to them the faithful application of said funds towards the construction of that portion of the road between Mitchell's Station and Union Springs."

The proposition submitted on behalf of the railroad company, as contained in a letter addressed by Col. Louis Owen, president, to the corporate authorities of the town, dated January 25, 1869, was in these words : " Gentlemen,— It being the earnest desire of the board of managers of this company to push forward without delay the construction of the railroad to your town, and in order to accomplish this result the means must be raised, and I am directed to submit for your consideration the following propositions, to wit : It is proposed by the board of managers to solict aid of the intendant and town council of Union Springs, in their corporate capacity, by a subscription to the capital stock of this company, for the amount of twenty-five thousand dollars (two hundred and fifty shares, at $100 per share), to be paid in the bonds of Union Springs, bearing eight per cent. interest, this company issuing therefor their certificate of stock. I attach hereto a copy of the resolutions adopted by the board."

The proceedings of the corporate authorities of the town were shown in the following extracts from their minutes : " January 29, 1869. Councilman Locke offered the following resolution, which was adopted : ' Resolved, that a committee of three members of this board, the intendant to be included, be appointed, to communicate with the board of directors of the Montgomery and Eufaula Railroad Company, to ascertain whether said board of directors will receive the bonds of the town of Union Springs in payment of the subscription of said town to the capital stock of said railroad, provided the payment of said bonds be conditioned upon the said railroad com-

pany completing said road to the town of Union Springs within twelve months from the issuing of said bonds.' In compliance with the above resolution, the following committee were appointed : T. Pullum, intendant, H. Peebles, W. B. Locke." . . . . " March 8, 1869. The following resolutions were presented by Councilman McCall: '1. Resolved, that in response to the application of Col. L. Owen, and in conformity to the express wishes of the town meeting recently held, the council will submit the question of subscription or no subscription to the capital stock of the Montgomery and Eufaula Railroad Company to the voters of Union Springs, at an election to be held on Monday, the 12th day of April, 1869, upon the following terms, to wit : The amount of subscription shall be $25,000, payable in bonds having twenty years to run, and bearing eight per cent. *per annum* interest in currency. 2. That if said subscription is authorized and made, $5,000 of the bonds shall be issued, to be used between the 25th and 31st miles of said road, beginning at Montgomery, and the remainder of said bonds shall be issued whenever said railroad can use them on the portion of the road between the 30th mile and Union Springs. 3. That the intendant appoint two managers to hold said election, who shall hold and manage the same as the law prescribes. 4. That those favorable to said subscription shall indorse on their tickets *Subscription*, and those opposed *No subscription*. 5. That the clerk of the council shall give thirty days' notice of said election, in the *Union Springs Times*.' The above resolutions were taken up *seriatim*, and, with some slight alterations and amendments, were adopted as they now stand. Councilmen Baskin and Glover were appointed managers of the election." . . . . " April 12, 1869. The committee to whom was referred the management of an election for subscription or no subscription make the following report, which was adopted, and ordered to be spread upon the minutes, to wit : ' To the intendant of the town of Union Springs : Your committee, to whom was referred the management of an election ordered for subscription or no subscription to the capital stock of the Montgomery and Eufaula Railroad Company, payable in the bonds of the town, to the amount of twenty-five thousand dollars, have discharged the duty assigned them, and report the following as the result of the polls : *Subscription* received all the votes cast.' All of which is respectfully submitted." (Signed by G. W. Baskin and N. O. Glover.) " On motion of Councilman McCall, the intendant was directed to notify Col. L. Owen, president of the M. & E. Railroad Company, of the favorable action of the citizens in voting unanimously for the subscription of twenty-five thousand dollars to said road." . . . . " August 30, 1869.

[Fielder *v.* Montgomery and Eufaula Railroad Co.]

On motion of Councilman McCall, the intendant was instructed to issue five thousand dollars of the town bonds, and deliver them to the president of the Montgomery and Eufaula Railroad Company, and to deliver the remaining twenty thousand as they may be called for by the president, after the road reaches thirty miles."

The bill alleged, that the proceedings connected with the subscription and execution of the bonds " were had without any legal authority ; that the railroad company did not, prior to the subscription, by its president and a majority of its directors, in writing propose to the mayor and council of said town that it should subscribe for and take any amount of capital stock named in such writing, at a certain price per share, and pay for the same in the bonds of the town ; and that no such proposition in writing was ever delivered to the corporate authorities of said town ; and that a majority of the corporate authorities of said town did not approve any such proposition, or pass any resolution to that effect, nor enter the same upon its minutes within ten days after receiving it, nor submit any such proposition, or order any special election of said town to be had within thirty days after the adoption of any such resolution ; and that no such proposal was ever submitted by the corporate authorities of said town, or a majority of them, to the qualified voters of said town ; " and that a majority of the qualified voters of the town did not vote at the election. On the filing of the bill, a *fiat* for an injunction was granted by Hon. JAMES Q. SMITH, the judge of the second judicial circuit. Each of the defendants ·filed an answer, in which they incorporated a demurrer to the bill for want of equity, and insisted on the validity of the subscription and bonds, and a substantial compliance with the terms of the statute by the two corporations ; but they admitted the irregularities in the proceedings which were specified in the bill and shown by the copy of the proceedings above set forth.

On final hearing, on pleadings and proof, the chancellor dismissed the bill; and his decree is now assigned as error.

STONE & CLOPTON, for the appellants, cited the case of *Trammell* v. *Pennington* (45 Ala. 673), and insisted that the proceedings did not show a substantial compliance with the terms of the statute authorizing counties, cities, and towns to subscribe to the capital stock of railroads.

WATTS & TROY, *contra,* relied on *Ex parte Selma & Gulf Railroad Co.* 45 Ala. 696.

PETERS, C. J. — This is a bill to enjoin the collection of

[Fielder v. Montgomery and Eufaula Railroad Co.]

a tax levied by the corporate authorities of the town of Union Springs in this State, for the purpose of paying the interest of certain bonds issued by said corporation, and delivered to the Montgomery and Eufaula Railroad Company, to pay for the subscription of said town to the stock of said railroad company. The bill was dismissed on the hearing below, and the complainants in that court bring the decree of dismissal to this court for review. The decree is the only error assigned.

In the case of *Ex parte Selma & Gulf Railroad Company*, at the June term of this court in 1871, it was determined that the legislature of this State, under the present constitution, " has power to authorize a county, as a body corporate, to subscribe for stock in a railroad company, if the people choose to do so by a popular vote to that effect." 45 Ala. 696. The subscription, and the issue of the bonds in this controversy, grew up under the provisions of the act of the 31st of December, 1868, which was the act construed and pronounced valid in the case above cited. Acts of Ala. 1868, p. 514, No. 172. It seems now to be the settled law, that where the power to make the subscription and to issue the bonds, or to impose a tax necessary for its payment, is once shown to exist, the obligation to pay cannot be denied, or repudiated. The consent to the " subscription " is a consent to the issuance of the bonds, and an obligation to pay them ; and it is a consent also to the tax necessary for this purpose, if that is the mode allowed by law for raising the funds required for their payment. 45 Ala. 730, 731. Here, the corporations were fully organized on both sides, and capable of contracting to the full extent of the obligations they each undertook to perform ; and they substantially pursued the mode authorized by law for this purpose.

Speaking upon this important question, the supreme court of the United States, quoting the language of the supreme court of Wisconsin, says : " The power of municipal corporations, when authorized by the legislature to engage in works of internal improvement, such as the building of railroads, canals, harbors, and the like, or to loan their credit in aid thereof, and to defray the expenses of such improvements, and make good their pledges by an exercise of the power of taxing the persons and property of their citizens, *has always been sustained*, on the ground that such works, although they are in general operated and controlled by private corporations, are nevertheless, by reason of the facilities which they afford for trade, commerce, and intercommunication between different and distant portions of the country, indispensable to the public interests and public functions. It was originally supposed that they would add, and subsequent experience demonstrated that they have added, vastly and almost immeasurably, to the general business, the

[Wright v. Merriwether's Administrator.]

commercial prosperity, and pecuniary resources of the inhabitants of cities, towns, villages, and rural districts through which they pass, and with which they are connected. It is in view of these results, the public good thus produced, and the benefits thus conferred upon the persons and property of all the inhabitants composing the community, that courts have been able to pronounce them matters of public concern, for the accomplishment of which the taxing power might lawfully be called into action." *Olcott* v. *The Supervisors*, 16 Wall. 678, 691, 692; *Hasbrouk* v. *Milwaukee*, 3 Wisc. 612. In this important case, the highest judicial tribunal in the nation declares, in effect, that if the power to make the subscription, and to issue the bonds for its payment, *exists at the time of the subscription and issuance of the bonds*, their obligation must be complied with, and this obligation will be enforced by the national power. As a deduction from this conclusion, which is certainly eminently just, it must follow that mere irregularities, not fraudulent, which may have intervened in the exercise of the authority to make the subscription and issue the bonds for its payment, must be held to be waived, if not objected to prior to the issuance of the bonds and the performance by the railroad corporation of its part of the duty imposed, in consideration of the aid thus afforded.

This case is not at all analogous to the case of *Trammell* v. *Pennington et al.* 45 Ala. 673. In this latter case, the railroad company was not fully organized before the attempt 'to procure the subscription was made; and for this reason, the attempt to procure it was enjoined. Here, this capital objection does not exist. The bill and proofs in this case do not show a sufficient objection to the levy and collection of the tax complained of, to justify the interference of a court of equity. It was, therefore, properly dismissed.

The judgment of the court below is affirmed, with costs.